THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH ANTHONY BETO, Defendant-Appellant.

First District (1st Division)   No. 79-171

Opinion filed July 14, 1980.

Steven Clark, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Wesley H. H. Ching, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from a conviction for the crime of murder and a sentence of 200 to 300 years in the State penitentiary, after defendant's jury trial by the circuit court of Cook County.

The issues presented for review are: (1) whether the police had probable cause to arrest the defendant; (2) whether the prosecutor's closing arguments denied the defendant a fair trial; and (3) whether it was reversible error for the trial court to admit hearsay testimony concerning auto registration.

The defendant, Joseph Beto, was charged by indictment with the murder of Dr. Hans Wachtel occurring on February 2, 1977, in Hyde Park, Chicago, Illinois. A co-defendant, Jerome Zamp, was tried by a separate jury during the same proceeding as agreed to by all parties.

Prior to trial, the defendant filed a motion to quash arrest and suppress evidence and a motion to suppress statements.

Investigators John Markham and Robert Strahlman testified at the hearing. Investigator Markham said that Investigator Copple told him to contact Gwendolyn Gilbert as she had information regarding the homicide of Dr. Wachtel in Hyde Park. Investigators Markham and Strahlman went to her apartment on May 8, 1977. She told Markham that a friend, Jerome Zamp, had visited her in early January and said he was in Chicago to fulfill a contract on a doctor. Zamp showed her a piece of paper with the name, Hans, and several sets of numbers written on it. Zamp also showed her a .32-caliber revolver with two bullets in it and said this was the gun that was going to be used. Zamp said that he was doing this for a "J.P." who lived at 707 North Sheridan Road, on the second floor.

She also told Markham that she met the defendant through Jerome Zamp in February of 1977 and that she and Beto were good friends who had been going out daily. She said she had a conversation with Beto in March in which he told her that Zamp had run out on him and left him holding the bag, and that Beto was the one that pulled the trigger. She said that the defendant had her drive around every day looking for J.P. to get more money for the contract because J.P. did not pay him in full. Ms. Gilbert asked Markham if she would be entitled to the reward and he said he would check on it.

Investigators Markham and Strahlman had a second conversation with Ms. Gilbert on May 10 or 11 at her apartment. She described a piece of paper with the name, "Dr. Hans Wachtel," and several sets of numbers

written on it. Markham had a third conversation with Ms. Gilbert on May 13 about one hour before the defendant was arrested. She said Beto was staying at 5550 North Kenmore. The reward was not discussed at either of these conversations.

At 12:55 p.m. on May 13, 1977, Investigators Markham and Strahlman arrested the defendant without an arrest warrant. They informed the defendant that he was being arrested for murder and transported him to the police station homicide office in a squad car. They arrived at the station at about 2 p.m. and placed the defendant in a room by himself. At about 2:45 p.m. Markham advised the defendant of his rights from a preprinted card. The defendant said that he understood his rights and wished to answer their questions. Markham informed the defendant that he was accused of murdering Dr. Wachtel. The defendant denied any involvement in or knowledge of the murder and said he did not know Gwendolyn Gilbert or Jerome Zamp. Markham told the defendant that Ms. Gilbert made a statement implicating him in the murder. The investigators left the room and contacted Ms. Gilbert. They asked her to come to the station. At about 6 p.m. the defendant asked to speak to the investigators, and in their presence he gave an oral statement. When an Assistant State's Attorney arrived at 8 p.m. the defendant refused to speak to him.

The defendant testified at the hearing on his motions. He said he was arrested and taken to the police station at about 2 p.m. At about 4 p.m. Officers Markham and Strahlman spoke with him for an hour but did not advise him of his rights. The defendant denied knowing anything concerning a murder he was asked about, although he admitted knowing Jerome Zamp and Gwendolyn Gilbert. When the investigators told him that Zamp had implicated him as the shooter, the defendant said he did not know anything about it. At a second conversation 1 to 1½ hours later, the defendant said he was advised of his rights. The investigators asked him to make a statement but he told them he had nothing to say. He was permitted to make a telephone call at about 3 that afternoon.

After arguments by counsel were heard, the trial court denied the defendant's motion to quash arrest and to suppress statements. As to the motion to quash arrest, the court found that Ms. Gilbert was a citizen informant, not a professional informant, and that the police had probable cause to arrest.

At the trial, Lillian Wachtel testified as to the circumstances surrounding her husband's death on February 2; 1977. Mrs. Wachtel also said that her husband had a patient, Mary Hart, who had a stillbirth. Dr. Wachtel later received threatening telephone calls from the patient's husband and reported the matter to the police. As far as she knew, her husband was not acquainted with John Peters.

Lillian Russell testified that on February 2, 1977, she left the apartment building at 5000 South East End Avenue at 7:20 a.m. and proceeded to the parking lot across the street. She noticed a car backed in next to her own car. This car was unusual to her since the rules required that cars be parked facing into the stalls. The car next to hers was an older model, green in color, dirty and dented, with two male persons sitting in it.

Harry Hyman testified that on February 2, 1977, he left the apartment building at 5000 South East End Avenue at 7:25 a.m. and went across the street to the parking lot. While going to his car, he noticed Dr. Wachtel sitting in his own car. Mr. Hyman started his car, scraped the snow off, and saw that Dr. Wachtel had not moved. He went over to the doctor's car and observed Dr. Wachtel slumped over the steering wheel with blood streaming from his head. The driver's door window was half open at the time. Mr. Hyman ran back to the apartment building and told the elevator operator to call for an emergency vehicle.

Raymond Graham, the engineer of the apartment building at 5000 South East End Avenue also testified. On February 2, 1977, he left the building at about 7:10 a.m. and went to the parking lot across the street. He noticed a car in the tenants' parking lot with two male occupants in it. The car was an older model, green Oldsmobile which was dirty and dented, and possibly made in 1969. He also saw Dr. Wachtel's unoccupied car in the lot. Graham left for a short trip in his car and returned about 10 minutes later. He went over to Dr. Wachtel's car and observed him seated behind the steering wheel with his head down, bleeding profusely from the forehead. After an ambulance arrived to take Dr. Wachtel to the hospital, Mr. Graham removed the keys from the doctor's car and closed the driver's door window which was half open.

Gwendolyn Gilbert implicated the defendant in the murder of Dr. Wachtel. Ms. Gilbert testified that she had known Jerome Zamp for 9 to 10 years when, in January of 1977, she learned that he was in Chicago. She called Zamp at the In Town Hotel and he came over to her apartment, in early January. Zamp continued to visit with her almost every day for the rest of the month of January. She met the defendant shortly thereafter. Ms. Gilbert saw Zamp in possession of a .32-caliber revolver. He took two bullets out of the gun at her request. Zamp showed her a piece of paper, and she looked at it closely when he was asleep. She copied down the name, "Hans Wachtel," and the address, "5000 East End," in her address book. Ms. Gilbert also saw Zamp with a dirty, old, four-door, green Oldsmobile in a parking lot. Earlier she drove Zamp to the 700 block of Sheridan Road where he got the keys. Zamp and a friend, Johnny Angel, were unable to start the car, so she took them to a service station on Clark Street.

On February 2, 1977, Ms. Gilbert learned of the murder of Dr. Hans Wachtel on television. She saw Zamp three days later at the defendant's apartment located at Lawrence and Central Park. Beto and a girl, Kathy, were there when she left with Zamp. In March of 1977, Ms. Gilbert and her son went to Texas for 2 weeks. Before going to Texas she saw Zamp with $50 and $100 bills. Upon her return she did not see Zamp and tried to contact him. She went to the defendant's apartment in the second week of March and asked him where Zamp was. Beto said that he left and left him holding the bag. Beto wanted to know where he was also. Ms. Gilbert began seeing the defendant almost daily until May of 1977. They tried to locate J.P. (John Peters) to find out where Zamp was staying in New Orleans. During a conversation in her car, the defendant said, "I don't know why Jerry (Zamp) did this to me. After all I did it for him. You know I pulled the trigger. He didn't have nerve enough." The defendant made this statement to her in the third week of March.

In early May of 1977, Ms. Gilbert contacted the police. She did not go to the police for the reward. She did not ask the police about the reward at the initial meeting. On May 15, 1977, Ms. Gilbert gave the police a written statement in which she said the defendant told her he had shot the guy for Zamp. She hoped to receive a reward when the case is over.

Investigator Robert Strahlman's testimony at trial was similar to the testimony heard at the pretrial hearing. Initially, after his arrest, the defendant denied any knowledge of the murder. Subsequently, the defendant was informed that Ms. Gilbert had made a statement incriminating him, and he asked to speak to the investigators. At trial, Officer Strahlman testified to the oral statement made by the defendant.

In the statement, the defendant said that he entered into a contract with Jerome Zamp to kill Dr. Wachtel. They decided to kill the doctor in the early morning hours and took three trips to Hyde Park to plan it. Shortly before 7 a.m. on February 2, 1977, they drove J.P.'s green Oldsmobile to the doctor's parking lot and backed the car into a space for a good view. They observed Dr. Wachtel leave his apartment building and get into his car. Zamp got out, walked over to the doctor's car, and knocked on his car window. When Dr. Wachtel partially opened the window, Zamp placed a gun in the window. Blood shot out of Dr. Wachtel's face and head as he slumped over the steering wheel. Zamp ran to their car, jumped in and said "I shot him," as they drove away. After washing the car, they parked it at Lawrence and Kedzie and took a cab to J.P.'s apartment at 707 Sheridan Road, No. 212. They gave the car keys to the houseboy and went back to the defendant's apartment at Lawrence and Central. Zamp received the money from J.P. for the killing of Dr. Wachtel which they used to buy drugs. Zamp had a .32-caliber revolver

and the defendant had a .32-caliber automatic. The weapon used in the killing was a revolver.

Investigator Strahlman stated that on May 14, he contacted the New Orleans Police Department to effect the arrest of Zamp. He also had John Peters arrested in San Francisco. Over defense objection he testified that his investigation had disclosed that a green Oldsmobile was registered to John Peters. John Peters was brought into the courtroom and Strahlman identified him in the presence of the jury over defense objections. The car was never located.

The defendant, Joseph Beto, testified in his own behalf. He said he had known Zamp for 14 years and saw him in January of 1977. He never met John Peters. He met Gwendolyn Gilbert through Zamp.

Zamp moved into his apartment in mid-February and stayed 3 to 4 weeks. He saw Zamp with a green Oldsmobile. In March, Zamp left for New Orleans and told the defendant he could be reached at the Society Page Bar. Ms. Gilbert contacted him and wanted to know where Zamp was, but he refused to tell her on Zamp's request.

The defendant said that when he was arrested the police told him a statement was made against him, and he told the police he did not know anything about it. He asked to make a telephone call to an attorney but was not allowed a call until the next morning. He refused to sign a statement and denied making a statement to Investigator Strahlman. The defendant never told the police or Ms. Gilbert that he shot and killed Dr. Wachtel or that he was involved in it. He did not take part in the killing of Dr. Wachtel on February 2, 1977.

Following closing arguments the jury was instructed. After the jury had begun deliberations defense counsel moved for a mistrial based on the improper closing argument of the prosecutors. The motion for mistrial was denied. The jury subsequently returned a verdict finding Joseph Beto guilty of murder. After denial of a written motion for a new trial and a hearing in aggravation and mitigation, Mr. Beto was sentenced to 200 to 300 years in the State penitentiary. The defendant brings this appeal from the judgment of the trial court.

The defendant contends he was arrested without probable cause, claiming the arrest was based solely on information provided by an informant and there was no showing the informant was reliable.

■■ Generally, probable cause to arrest exists where the circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing an offense has been committed and that the person arrested committed the offense. (See *Brinegar v. United States* (1949), 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302; Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c).) Further, the utilization of hearsay is proper to

establish probable cause. Similarly, an officer testifying on a motion to suppress, in explaining why he made a warrantless arrest, can relate what data was observed by another and told to the officer. (See *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *United States v. Harris* (1971), 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075; *People v. Williams* (1963), 27 Ill. 2d 542, 190 N.E.2d 303.) In situations where the hearsay evidence obtained by the arresting officer has been offered by a police informant, there must be a showing of prior reliability or independent corroboration of the information in order to establish probable cause. See *McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056; *People v. Wilson* (1970), 45 Ill. 2d 581, 585, 262 N.E.2d 441.

The defendant contends that Ms. Gilbert was similar to a police informant because she expected to receive a reward in return for the information she gave the police, and that she was unreliable, since she was an admitted prostitute. The defendant then argues that probable cause to arrest the defendant was not established and defendant's motion to quash his arrest was erroneously denied.

■■ It is well-accepted law in Illinois that the requirement of prior reliability or independent corroboration which must be shown when the arresting officer acts upon information from police informers does not apply to information supplied by citizen-informers. *People v. Hester* (1968), 39 Ill. 2d 489, 514, 237 N.E.2d 466.

At the conclusion of the pretrial hearing on the defendant's motion to quash his arrest the court stated:

"As to the motion to quash the arrest the court finds from the testimony that Gwendolyn Gilbert was not an informant, she was a citizen, she gave certain information to a police officer a felony had been committed, the police officer had reasonable grounds to suspect and probable cause based on the information of a citizen to suspect that the crime was being or had been committed by the defendant, Beto. There is no legal definition only a person must act as a reasonable person, the court feels that based on the information that they had received that they did have probable cause to make the arrest; and, the motion to quash is denied."

■■ On its face, the information supplied by Ms. Gilbert provided the officers with probable cause to believe the defendant participated in the calculated murder for hire of Dr. Wachtel. Ms. Gilbert was a citizen providing information, in that she had never given information to the officers in the past and was clearly not a professional or police informant. The fact that she had been a prostitute does not affect her status as a citizen informant. (See generally *People v. Carter* (1969), 116 Ill. App. 2d 62, 253 N.E.2d 490; *People v. Roberta* (1933), 352 Ill. 189, 185 N.E.2d

243.) Because Ms. Gilbert was a citizen informer, it was unnecessary for the police to establish her prior reliability or to corroborate her information.

For these reasons, the trial court properly denied the defendant's motion to quash his arrest.

The defendant also claims improper closing argument by the prosecutor denied the defendant a fair trial by: (1) being calculated to create sympathy for the deceased's widow; (2) attacking the truth and veracity of defense counsel; (3) improperly bolstering the credibility of a State's witness by opinion; and (4) inflaming the passions of the jury against the defendant.

■■ The People maintain, *inter alia*, that many of the alleged improper comments of the prosecutor were not objected to, and were therefore waived. Indeed, with regard to the first three allegations of improper closing argument listed in the preceding paragraph, the record reveals that the defendant failed to object to the remarks in question, thereby failing to bring the issues to the attention of the trial court. Under these circumstances, the defendant has waived any possible error, and those issues are not properly before this court. *People v. Donald* (1977), 56 Ill. App. 3d 538, 548, 371 N.E.2d 1101; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

With regard to the allegation that the prosecutor's argument inflamed the passions of the jury against the defendant, the defendant refers to the following argument of the prosecutor:

"Yes, a reward was involved. Why do you think they put a reward out? So that people, not fine citizens like you, might be so that people like Gwendolyn Gilbert will come forward with what information they have. That's why the reward is put out. But that wasn't her sole motive in going to the police. Zamp, her friend was out of town, gone. Beto now was around, day after day. Beto frightened her. And she had every reason to be frightened because at moments—

Mr. Wolff: Objection, your Honor.

The Court: Jury heard the evidence.

Mr. Breen: Because at a moment when he lost his temper, he made the admission, I shot the man, Jerry Zamp didn't have the guts to do it. That's why she started getting frightened. And that reward money is big enough to put her far enough away from here, if you cut Joseph Beto loose.

Mr. Wolff: Objection, your Honor.

The Court: Objection will be sustained. I'll instruct the jury to disregard the last statement."

■ The record is clear that the trial judge sustained defendant's

objection, instructed the jury to disregard the statement and prevented any further comment along the same lines. Any error was minimized by the trial court's prompt action in sustaining the objection and instructing the jury to disregard the statement objected to. Under the circumstances, this portion of the prosecutor's closing argument was not so prejudicial as to require reversal. See *People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133.

The defendant further claims hearsay testimony of Officer Strahlman was erroneously admitted into evidence, wherein it was testified that an investigation of the green Oldsmobile's registration revealed the auto was owned by J.P., the man who paid for the execution of Mr. Wachtel. However, this issue is not properly before us. The defendant failed to include this allegation in his written motion for a new trial, thereby failing to give the trial judge an opportunity to correct the error, if any existed. A written motion for a new trial, which spells out the grounds, waives all errors not so spelled out. *People v. Touhy* (1964), 31 Ill. 2d 236, 201 N.E.2d 425.

For the above and foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.