THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
AARON Z. GOSBERRY, Defendant-Appellant.

First District (3rd Division)   No. 80—1378

Opinion filed September 22, 1982.

James J. Doherty, Public Defender, of Chicago (Aaron L. Meyers, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Gregory J. Ellis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Aaron Z. Gosberry, was found guilty of armed robbery by a jury. Defendant, who is black, contends that over his objections, the prosecutor systematically used peremptory challenges during the *voir dire* examination of the prospective jurors to exclude blacks from the jury solely because they were blacks. It is defendant's position that he was denied the type of fair trial guaranteed under the sixth amendment of the United States Constitution because the State affirmatively frustrated his right to a jury drawn from a fair cross section of the community. Defendant also claims that the State failed to prove him guilty beyond a reasonable doubt. We reverse the conviction and remand the case for a new trial.

Eight blacks were available to be seated as jurors during the *voir dire*. Seven of the blacks were excluded by the prosecutor. Defense counsel objected after each exclusion, protesting that the prosecutor was systematically excluding blacks solely because they were blacks. Each objection was summarily overruled. The prosecutor then allowed the remaining black to become a juror. In total, the prosecutor exercised seven peremptory challenges, all of which were used against blacks.

The premise of the State's first argument is that a prosecutor has a right to exclude blacks from a jury during the *voir dire* solely because they are blacks. The State's argument is based on the same contentions that were flatly rejected in *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046. In *Payne*, we held that the State's systematic exclusion of prospective jurors solely because of their race is invidious and unconstitutional at any stage of the jury selection, *i.e.*, from the time the general jury list is prepared by the jury commissioner until the jury is actually selected and sworn. (106 Ill.

App. 3d 1034, 1036-37, 436 N.E.2d 1046, 1048.) We based our decision in *Payne* on a defendant's right to an impartial jury under the sixth amendment and upon the roles of the State, the prosecutor and the court itself in a criminal trial. We conclude that the State's argument is untenable for the reasons stated in *Payne*.

Next, the State argues: "[T]he record demonstrates that the People acted without discrimination or systematic exclusion. First, the record is clear that the jury panel did include one black juror. Secondly, for at least two of the challenged black jurors, the reasons for exercising the peremptory challenges are evident from the cold record. Prospective juror Inez Wilson stated that one of her sons had been sent to the prison for carrying a gun. Prospective juror Barney Harrell stated that he had been a victim of a crime in the past." These contentions are without merit.

■ First, the State's contention that the record shows that it acted without discrimination or systematic exclusion because the jury included one black is the same argument the State made in *Payne*. In *Payne*, we stated:

"The State also argues that because one black was seated on the jury the State did not affirmatively deny defendant a fair cross section of the community on the jury. This argument is unavailing because this case involves the exclusion of all the black jurors by the State *before* the last available black juror was allowed to be seated. Systematic and affirmative racial exclusion of available black jurors by the State which results in only one black being seated as a juror is no less evil and no less constitutionally prohibited than the same procedure which results in the total exclusion of blacks. We are not unmindful that some attorneys may leave a token black on the jury after they are assured that there are no more blacks available to be seated. This type of practice does not lessen the unconstitutionality of the State's initial exclusion of blacks from the jury solely because they were blacks." (106 Ill. App. 3d 1034, 1045, 436 N.E.2d 1046, 1054.)

The State's argument is no less specious here.

As to the State's second contention, we reviewed the "cold record" to determine the circumstances involving the State's exclusion of black prospective jurors Inez Wilson and Barney Harrell. The record shows that during the *voir dire*, Inez Wilson stated that she is married and has 12 children, one of whom, a son, had been in prison six years earlier for carrying a gun. The record contains no other facts concerning the incident involving her son. Barney Harrell stated

that he works as a supervisor for Purolator and as a senior stockman for Commonwealth Edison. He has held these two jobs for 11 years. Two years prior to the trial, he left his wallet lying out at work, and someone stole his credit card from his wallet. This is the incident to which the State makes reference when it contends that it excluded Mr. Harrell as a juror because he had been the victim of a crime.

■ With regard to the State's reason for excluding Mr. Harrell, the record shows that several persons who became jurors had also been victims of crimes. During the *voir dire*, Mrs. Margaret Bureta stated that her car was broken into and its battery stolen six months prior to the trial. She was not excused by the prosecutor, and she became a juror. Miss Garrie Parks stated that her automobile was stolen about eight years ago, and it was never returned. She also stated that she has an aunt whose house was burglarized six years ago. She was not excused by the prosecutor, and she became a juror. Robert Houghton stated that his automobile was stolen in 1977. He was not excused by the prosecutor, and he became a juror. Mrs. Debra Genvilas stated that her home was burglarized four years ago. She was not excused by the prosecutor, and she became a juror. Under the circumstances, we conclude that although the State may have excused Inez Wilson for a reason other than her race, the State's contention that prospective juror Barney Harrell was excused because "he had been a victim of a crime in the past" is implausible and clearly untenable.

■ Although the State does not compare the backgrounds of the black prospective jurors who were excused by the State with the backgrounds of those persons who became jurors, we have made the comparison.[1] The record demonstrates that the blacks who were ex-

---

[1]

I

BACKGROUNDS OF THE PROSPECTIVE JURORS WHO WERE EXCLUDED BY THE STATE, ALL BLACKS

Janice Smith is single. She is unemployed and lives on the south side of Chicago with her mother. She has no previous jury duty. She has never been the victim of a crime. She stated that she believed she could be a fair and impartial juror.

Alex Jackson resides on the south side of Chicago. He has worked for 14 years as a pattern maker for Burton Auto Springs. He is divorced, and he has five children, the youngest being a 13-year-old son. This was the first time he was called for jury duty. He has never been the victim of a crime. He stated that he believed he could be a fair and impartial juror.

William Myles is a resident of the south side of Chicago. He was employed for five years as a floor finisher for the University of Chicago. Prior to that employment, he was a stock solicitor for McBurney Brothers. He is divorced and has four children. His former wife is a nurse. He has no friends in the police department or the prose-

cluded are factually heterogeneous and that the single distinguishing characteristic that the excluded blacks share is their race. We believe that the facts and circumstances in this case demand the conclusion that it should have reasonably appeared to the trial court that the prosecutor was using peremptory challenges to systematically exclude blacks from the jury solely because they were blacks. At that stage, the trial court should have required the prosecutor to demonstrate, by whatever facts and circumstances existed, that blacks were not systematically excluded solely because they were blacks. The failure of the trial court to impose such a requirement on the prosecutor at that stage was error, and the error is of such magnitude that the conviction must be reversed and the case remanded for a new trial. *People v. Payne* (1982), 106 Ill. App. 3d 1034, 1045-46, 436 N.E.2d 1046, 1054.

▮ Although we base our decision in this case on *Payne,* we recognize that another division of this court, with one justice dissenting, has recently disagreed with *Payne. (People v. Teague* (1982), 108 Ill. App. 3d 891.) *Teague* rejects *Payne* for three reasons. First, *Teague* expressly disagrees with the principle stated in *Payne* that " 'a defendant is constitutionally entitled to a petit jury that is as near an approximation of the ideal cross section of the community as the process of random draw and constitutionally acceptable procedures per-

cutor's office. He has never served on a jury. He has never been the victim of a crime. He stated that he believed he could be a fair and impartial juror.

Rosalind Newby is a resident of the far south side of Chicago. She is divorced and has a 2-year-old daughter. She was a student at Taylor Business Institute for a year and a half. She has never been the victim of a crime. She has no previous jury duty. She stated that she believed she could be a fair and impartial juror.

Oma Carney lives on the south side of Chicago. She has two sons, ages two and four. She has been a staff assistant at the Standard Oil Co. of Indiana for 10 years. She has no previous jury duty. She has never been the victim of a crime. She stated that she believed she could be a fair and impartial juror.

Inez Wilson lives on the south side of Chicago. She is married. Her husband is a retired cabdriver. She had worked as a custodian for the city's Human Services Department for 12 years. She has 12 children, one of whom, a son, had been in prison 6 years earlier for carrying a gun. She previously served as a juror in a civil case. She stated that she would not favor either side in this case and that she believed she could be fair and impartial.

Barney Harrell lives on the south side of Chicago. He holds two jobs. He works as a supervisor for Purolator and as a senior stockman for Commonwealth Edison. He has held two jobs for 11 years. He is divorced and has no children. This was the first time he was called for jury duty. Two years prior to the trial, he left his wallet lying out at work, and someone stole his credit card from his wallet. He stated that he believed he could be a fair and impartial juror.

mit.' " (108 Ill. App. 3d 891, 896.) *Teague* relies upon *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330, *People v. Allen* (1981), 96 Ill. App. 3d 871, 422 N.E.2d 100, *People v. Tucker* (1981), 99 Ill. App. 3d 606, 425 N.E.2d 511, *People v. Lavinder* (1981), 102 Ill. App. 3d 662, 430 N.E.2d 243, and *People v. Belton* (1982), 105 Ill. App. 3d 10, 433 N.E.2d 1119. These cases are discussed and distinguished in *Payne*. We continue to believe that the principle stated in *Payne,* but rejected in *Teague,* is sound and that "the State may not affirmatively frustrate this constitutional entitlement." 106 Ill. App. 3d 1034, 1037, 436 N.E.2d 1046, 1048.

■ Next, *Teague* states: "If, as *Payne* holds, the State under the circumstances there posited has to show a basis for its peremptory challenges, then the peremptory challenge has been so effectively emasculated as to destroy its function * * *." (108 Ill. App. 3d 891, 897.) We disagree. *Payne* merely holds that when it reasonably appears to the trial court that the prosecuting attorney is systematically excluding blacks from the jury solely because they are blacks, then the trial court should require the prosecutor to demonstrate that blacks were not being systematically excluded from the jury solely because they were blacks. Plainly, if the prosecutor seeks to peremptorily excuse people from jury service for any reason other than the fact that they happen to belong to a discrete group, then *Payne* has no applicability or relevance. All that *Payne* "effectively emasculates" is veiled State participation in racism, sexism, and religious and ethnic prejudices.

---

## II
### BACKGROUNDS OF THE PERSONS WHO BECAME JURORS

Betty Duerling lives in Berwyn but she had lived on the south side of Chicago. She has worked as a secretary with State Farm Insurance Company for five years. Her husband is an engineer for a construction company. She has no children. She has a friend who is a police officer in Chicago, and she sees him two or three times a year. She stated that she would not be affected by the friendship and would judge police testimony like any other. She has no prior jury service. She has never been the victim of a crime. She stated that she believed she could be fair and impartial in this case.

Margaret Bureta is a resident of the northwest side of Chicago but was originally from Milwaukee. She worked as a food service director at Walther Memorial Hospital, and before that employment, she worked at Billings Hospital. She did similar work for a school district in Wisconsin. Her husband is a market analyst for International Harvester. They have no children. She has a friend in Wisconsin who is a lawyer, but he does no criminal work. Her car was broken into and its battery stolen within six months of the trial. She stated that she believed she could be impartial in this case.

Margaret Nikitscher lives alone on the southwest side of Chicago. She has worked as an accounting clerk at Mid-City Bank for six years. Her father is a baker, her

*Teague* next states: "Further, if the law in Illinois is to be the abolition of peremptory challenges as enunciated in *Payne*, the problem should be met forthrightly by the legislature by abolishing peremptory challenges to make all challenges challenges for cause and place their exercise in the discretion of the trial judge." (108 Ill. App. 3d 891, 897.) However, *Payne* does not enunciate the abolition of peremptory challenges any more so than *Teague*. Nor does *Payne* enunciate the abolition of peremptory challenges any more so than *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824,[2] which is relied upon in *Teague*. In both *Payne* and *Swain*, the courts recognized that the trial court may control peremptory challenges if it appears to the trial court that the State is using peremptory challenges to violate the constitutional rights of the defendant. (See *People v. Payne* (1982), 106 Ill. App. 3d 1034, 1043, 436 N.E.2d 1046, 1053 (discussing *Swain*).) Moreover, even *Teague* recognizes the fact that the trial court may control peremptory challenges when it states: "it is true that it is constitutional error to exclude a group as a group where it is shown that the group has been systematically prevented from jury service or on particular juries." (108 Ill. App. 3d 891, 895.) We presume that this statement in *Teague* means that *if it is shown to the trial court* that the State is systematically excluding a group as a group from being on a particular jury, *then the trial court should*

mother is unemployed. She has no previous jury service. She has never been the victim of a crime. She stated that she believed she could be fair and impartial in this case.

Annie McGeorge lives alone on the north side of Chicago. She is a nurse at Columbus Hospital and has worked as a nurse at other hospitals. She has two uncles who are police officers in Wisconsin, but she rarely sees them. She had once been called for civil jury service but has not previously sat as a juror. She has never been the victim of a crime. She stated that she believed she could be fair in this case.

Garrie Parks lives on the southwest side of Chicago with her mother and 15-year-old daughter. She works at the Pettibone Co. Prior to that job, she worked at Owens Co. making trophies. She has no prior jury service. Her automobile was stolen about eight years ago, and it was never returned. She has an aunt whose home was burglarized six years ago. She said that she would favor neither side in this case and that she could be fair and impartial.

Robert Kennedy has lived in Des Plaines for three years. Prior to that time, he lived in Rogers Park. He is a route salesman for a company that sells beer. His wife has worked for Central Telephone Co. for three years, and they have four sons. His brother is a Wilmette policeman, but that would not cause him to favor the testimony of police witnesses. He did not have jury service before this case. His brother's apartment was burglarized three years prior to the present trial. He said he believed he could be fair and impartial in this case.

[2]*Swain* is fully discussed in *Payne*.

require the prosecutor to lay bare the reasons for his challenges, and the trial court may then dismiss the jury panel as constituted. Thus, *Payne* does not enunciate the abolition of peremptory challenges any more so than *Teague* or *Swain*. *Payne* merely gives real meaning to what would otherwise be vacuous statements by the courts regarding the State's systematic exclusion of blacks from the jury solely because of their race.

We agree with *Teague* that the problem of excluding blacks from the jury during *voir dire* solely because they are blacks "should be met forthrightly." But rather than looking to the legislature, we believe that the judiciary must look to itself to meet the problem forthrightly, for the problem exists in the courtrooms, where it gnaws at any semblance of justice and equal treatment, and not in the halls of the legislature. We in the judiciary can ill afford to allow the problem

---

Robert Houghton lives on the northwest side of Chicago. He is married but has no children. He works as a lineman for the City of Chicago, Bureau of Electricity. His wife works as a medical assistant. His father is a Chicago policeman, but that would not cause him to favor the testimony of police witnesses. In 1977, his auto was stolen. He has never served on a jury before this case. He stated that he felt he could be fair and impartial in this case.

James Gochenour lives on the northwest side of Chicago. He is married and works as a sales representative for U.S. Steel. His wife works for the CTA. They have three children in grade school. He does not have any friends who are policemen or prosecutors. He never served on a jury before this case. He has never been the victim of a crime. He stated that he believed he could be fair and impartial in this case.

Ann Barry lives with her parents in Evergreen Park. Her father is a retired CTA employee, and her mother is a housewife. She is an insurance adjuster for Commercial Union. She never served on a jury before this case. She has never been the victim of a crime. She stated that she believed she would be fair and impartial in this case.

George Chambers lives on the north side of Chicago. He is a widower and has no children. He is a retired railroad yard clerk. He has no law enforcement friends. He has never served on a jury before this case. He has never been the victim of a crime. He stated that he believed he could be fair and impartial in this case.

William Turek lives on the near southwest side of Chicago. He is married and unemployed. He had managed a motel and an apartment complex. He has no children. He never served on a jury before this case. He has no law enforcement friends. He has never been the victim of a crime. He stated that he believed he could be fair and impartial in this case.

Debra Genvilas is married and lives in Cicero. Previously, she lived in Naperville, Joliet and Chicago. She works as a supervisor for J.T. Ryerson & Sons. Before that job, she did accounting work for Jewel Foods. Her husband is an accountant. They have no children. They have relatives in the Chicago Police Department, but she said that would not affect her impartiality. Her house was burglarized four years prior to this trial, and no one was arrested for the crime. She never served on a jury before this case. She stated that she believed she could be fair and impartial in this case.

to continue[3] by labeling it one of legislative domain.

To meet the problem forthrightly, we must first candidly recognize and acknowledge that the problem exists. As Professor Jon R. Waltz, Northwestern University School of Law, has bluntly stated:

"It is an open secret that prosecutors in Chicago and other large cities have been using their peremptory challenges to systematically eliminate all blacks—or all but token blacks—from juries in criminal cases involving black defendants." (Waltz, *Now It's Harder for Lawyers to Pick Biased Jury*, Chicago Sun-Times, July 13, 1982, at 30.)

The issue has been raised on appeal in some form in no fewer than the following cases: *People v. Teague* (1982), 108 Ill. App. 3d 891; *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046; *People v. Belton* (1982), 105 Ill. App. 3d 10, 433 N.E.2d 1119; *People v. Dixon* (1982), 105 Ill. App. 3d 340, 434 N.E.2d 369; *People v. Batteast* (1982), 105 Ill. App. 3d 1201 (Rule 23 Order); *People v. Gaines* (1981), 88 Ill. 2d 342, 430 N.E.2d 1046; *People v. Mims* (1981), 103 Ill. App. 3d 673, 431 N.E.2d 1126; *People v. Lavinder* (1981), 102 Ill. App. 3d 662, 430 N.E.2d 243; *People v. Clearlee* (1981), 101 Ill. App. 3d 16, 427 N.E.2d 1005; *People v. Vaughn* (1981), 100 Ill. App. 3d 1082, 427 N.E.2d 840; *People v. Tucker* (1981), 99 Ill. App. 3d 606, 425 N.E.2d 511; *People v. Allen* (1981), 96 Ill. App. 3d 871, 422 N.E.2d 100; *People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029; *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117; *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330; *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448; *People v. Thornhill* (1975), 31 Ill. App. 3d 779, 333 N.E.2d 8; *People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731; *People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409; *People v. Petty* (1972), 3 Ill. App. 3d 951, 279 N.E.2d 509; *People v. Fort* (1971), 133 Ill. App. 2d 473, 273 N.E.2d 439; *People v. Butler* (1970), 46 Ill. 2d 162, 263 N.E.2d 89; *People v. Cross* (1968), 40 Ill. 2d 85, 237 N.E.2d 437; *People v. Dukes* (1960), 19 Ill. 2d 532, 169 N.E.2d 84; and *People v. Harris* (1959), 17 Ill. 2d 446, 161 N.E.2d 809. In addition, the issue has been substantially raised in *People v. Banks*, 1st

---

[3]See *People v. Payne* (1982), 106 Ill. App. 3d 1034, 1038-39, 436 N.E.2d 1046, 1049; see also *Some Thoughts on People v. Payne*, Ill. St. B.A. Newsletter, 13 Judicial Ad. 7 (August 1982), where Associate Professor James P. Carey, Loyola University School of Law, states: "The appearance of justice is as important as justice in fact. The systematic exclusion of members of racial minorities by use of peremptory challenges [by the State] can only have a corrosive effect upon public confidence in even-handed law enforcement."

District, Docket No. 79—1550, a case which was recently argued but has not yet been decided. All but four of these cases were tried in Cook County.

*Teague* does not discuss the existence of the problem or the effect upon our society of having blacks excused by the State from sitting on a jury solely because they are blacks. However, we believe a discussion of the existence of the problem and its effect upon our society is critical because our system of law is not based upon some transcendental revelation but upon the conscience of our society ascertained as best it may be by a tribunal disciplined for the task. (See *Bartkus v. Illinois* (1959), 359 U.S. 121, 128, 3 L. Ed. 2d 684, 689-70, 79 S. Ct. 676, 680.) We believe the conscience of our society can no longer tolerate the State's exclusion of blacks from juries solely because of their race. It does not matter what procedure or form the State uses to accomplish such pernicious discrimination. The simple fact is that it should not be done by the State under any procedure or form. The conscience of our society demands nothing less, and we as judges must reflect this conscience by demanding that lawyers representing the State in the trial of cases finally recognize and observe this simple fact. *Payne* makes this demand and thus reflects the conscience of our society. For this reason, and for the other reasons stated herein, we adhere to the holding and principles stated in *Payne*.

■ We next address defendant's contention that his conviction should be reversed outright because he was not proved guilty beyond a reasonable doubt. Defendant's argument is based upon his contention that the victim's initial description of defendant to the police was not definite. However, the evidence shows that defendant was identified by the victim at a lineup on the day following the incident and again in court. Thus, we believe that the evidence was sufficient for a jury to conclude that defendant was guilty beyond a reasonable doubt. This does not mean, however, that we are making a finding as to defendant's guilt or innocence which would be binding on retrial. Our consideration of the sufficiency of the evidence merely protects defendant's constitutional right against double jeopardy as mandated by *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375. See *People v. Clark* (1980), 84 Ill. App. 3d 637, 642, 405 N.E.2d 1192, 1195-96.

Accordingly, the judgment is reversed and the case is remanded for a new trial.

Reversed and remanded.

WHITE, P. J., and McGILLICUDDY, J., concur.