THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PASCUAL BONILLA, Defendant-Appellant.

First District (3rd Division)   No. 81—1657

Opinion filed July 13, 1983.

1042

David J. Bradford and Alan Raphael, both of Chicago (Jenner & Block, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David L. King, and Sara D. Hynes, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Pascual Bonilla, was charged with murder, aggravated arson, and arson. A jury found him guilty of murder and arson, and the trial court sentenced him to 25 to 75 years for murder, and to five to 15 years for arson, the sentences to run concurrently. On appeal defendant contends that the trial court erred in not permitting him to present evidence that a third party admitted setting the fire; that improper comments by the prosecutor during closing argument deprived defendant of a fair trial; and that the trial court erred in refusing to discharge the jury and to conduct a hearing regarding the prosecutor's exercise of peremptory challenges to exclude black and hispanic persons from the jury.

On January 21, 1977, at approximately 6 a.m., a fire occurred in a four-story apartment building located at 3734-36 North Pine Grove in Chicago. As a result of the fire, Julia Miller, 78 years old, died, and several other residents were hospitalized. The fire began on the fourth floor of the building when a couch was ignited in apartment 415.

A police officer and an assistant State's Attorney testified that on May 22, 1978, defendant orally confessed to setting the fatal fire. Lenore Nardelle testified for the State that at the time of the fire defendant and she shared a second-story apartment in the building in question. In the midst of an argument during which defendant was striking her, he stated that he wanted to set a fire. Defendant forced Nardelle to the fourth floor, where he pushed his way into an apart-

ment and set a couch on fire with matches. Defendant dragged Nardelle across the hall where he set a fire in another apartment. They left the building and drove around for awhile. When they returned, Nardelle watched the fire from the street while defendant reentered the building.

After the fire, defendant and Nardelle moved in with her parents and continued to live together. He struck her many times, and she was always in fear of him. When he struck her on May 21, 1978, she told her father, who called the police. Defendant was arrested for disorderly conduct, and the subsequent investigation implicated him in the fire.

Defendant initially contends that the trial court erred in not permitting him to present evidence that a third party admitted setting the fire. After a pretrial hearing, the trial court granted the State's motion to exclude evidence relating to a Ralph McNamara and his admission that he had set the fire.

On the day of the fire, police questioned McNamara, a resident, as he left the building. McNamara told the police that he started the fire, but then denied doing so. McNamara, whose answers were rambling and nonsensical, appeared to be mentally retarded. McNamara had been arrested the previous day for striking another resident, and his many previous arrests had been for battery and resisting arrest. The police did not charge McNamara with the crime here because there was no evidence involving him. Defendant did not subpoena McNamara as a witness.

██ █ Generally, the extrajudicial declarations of a third party, not made under oath, that he committed the crime, are purely hearsay, and even though they are declarations against interest, are inadmissible. (*People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1.) The rule should be departed from only when the hearsay declaration was made spontaneously to a close acquaintance; was corroborated by other evidence; was self-incriminatory and against the declarant's interest; and the declarant was present in the courtroom, under oath, ready to be cross-examined. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038; *People v. Craven.*) McNamara's statement was not made to a close acquaintance, and he was not in court ready to be cross-examined. Moreover, his statement received corroboration only from the flimsiest of circumstances. He had matches on his person and smelled of smoke as he left the burning building. The trial court correctly refused to allow defendant to offer evidence of McNamara's admission.

Defendant also contends that certain remarks of the prosecutors

during closing arguments deprived him of a fair trial. We shall comment only on those remarks to which defendant offered objections at trial. *People v. Beto* (1980), 86 Ill. App. 3d 622, 408 N.E.2d 293.

■ Citing three remarks, defendant argues that the prosecutors improperly commented on his failure to testify. Defendant misconstrues the first such comment where the prosecutor merely stated that the testimony of a character witness did not present a defense. The second comment complained of was the prosecutor's direct response to a remark by defense counsel who stated that the State had not called any witnesses from the building or from the fire department. The prosecutor properly replied that defendant could have called any of these people as witnesses. Even if the comment was improper, the trial court sustained defendant's objection to the remark. The third comment complained of by defendant arose out of defense counsel's statement that defendant had told the jury that he did not commit the crime by virtue of his plea of not guilty to the charges. During rebuttal, in commenting on defense counsel's statement, the prosecutor stated that she had not heard defendant say anything. While we reject the State's argument that it was invited comment, the remark was not emphasized and it certainly did not constitute prejudicial error.

■ Defendant also complains that the prosecutor misstated the burden of proof by stating that to acquit defendant, the jury would have to find that every State witness was lying. We find no such comment in the record. In his argument, defense counsel focused on the fact that people in power, including the police officer and prosecutor, had brought the charges against defendant and that people in power frequently told lies. The prosecutor replied that the thrust of defendant's argument was that the case was a big lie and that everyone, including the police officers and prosecutors, were liars. The comments were invited by defense counsel and were not improper.

■ Defendant also urges that the prosecutor's comments about the deceased's age and manner of death were improper. These remarks, based on facts in evidence and reasonable inferences, were proper. Our review of the entire closing argument convinces us that defendant was not deprived of a fair trial by any comments of the prosecutor.

■ ■ Defendant finally contends that the trial court erred in refusing to discharge the jury and to conduct a hearing regarding the prosecutor's exercise of peremptory challenges to exclude black and hispanic persons from the jury.

Our supreme court has recently considered and rejected precisely

the same issue. (*People v. Williams* (1983), 97 Ill. 2d 252; *People v. Davis* (1983), 95 Ill. 2d 1.) In those cases, relying on *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, the court ruled that, in a particular case, the prosecutor may constitutionally exercise peremptory challenges to eliminate black and hispanic persons from the jury. In *Williams* the court cited with approval *People v. McCray* (1982), 57 N.Y.2d 542, 457 N.Y.S.2d 441, 443 N.E.2d 915, which, in holding *Swain* was not effected by *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, emphasized the distinction between the jury pool and the jury actually selected. Distinctive groups in the community may not be systematically excluded from the jury pool, but once the pool is selected prospective jurors may be excluded by peremptory challenges. See *People v. Williams.*

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY, J., concurs.

JUSTICE WHITE, specially concurring:
This is still another of an increasing number of cases arising in this and other jurisdictions presenting the question of whether the State's systematic use of peremptory challenges to effectively exclude nonwhite jurors solely because of their race violates a defendant's sixth amendment right to an impartial jury drawn from a cross section of the community. The majority rely on *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, and its Illinois progeny, to reject defendant's claim that his constitutional rights were violated in this case. On May 31, 1983, the question regarding the State's use of peremptory challenge was again before the United States Supreme Court in petitions for writs of *certiorari* (82—1381, *McCray v. New York*; 82—5840, *Miller v. Illinois*; 82—5910, *Perry v. Louisiana*). (51 U.S.L.W. 3855.) Three justices joined in an opinion supporting denial of the petitions. Two dissented. Significantly, however, none of the five justices relied upon *Swain*, decided in 1965 by a divided court, as now being dispositive of the question. Justice Marshall, with whom Justice Brennan joined in dissenting, wrote, "I would grant certiorari to reexamine the standard set forth in *Swain*." (51 U.S.L.W. 3855, 3856.) In the majority opinion, Justice Stevens wrote:
> "My vote to deny certiorari in these cases does not reflect disagreement with Justice Marshall's appraisal of the importance

of the underlying issue—whether the Constitution prohibits the use of peremptory challenges to exclude members of a particular group from the jury, on the prosecutor's assumption that they will be biased in favor of other members of the same group. I believe that further consideration of the substantive and procedural ramifications of the problem by other courts will enable us to deal with the issue more wisely at a later date." (51 U.S.L.W. 3855.)

Thus, none of the United States Supreme Court justices facing this question found answers in unwaivering adherence to *Swain*. Indeed, further consideration of the *Swain* issue by other courts was invited.

*People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046, is the first Illinois case in which the court found that the State's use of peremptory challenges had deprived the defendant of a fair trial under the sixth amendment. That case is still pending on appeal in the Illinois Supreme Court, indicating that this subject is still receiving in this State the reexamination *McCray* invited. This opinion is written to contribute to that reexamination.

Generally, it can be said that any device or practice used by the State which has, as its purpose and effect, systematically requiring that all nonwhites accused of crime in Cook County be tried by all white or almost all white juries, violates the sixth amendment right to a fair trial before an impartial jury drawn from a cross section of the community. (See *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692.) This is clearly true when the State's action on the basis of race takes place in the selection of veniremen. (See *Peters v. Kiff* (1972), 407 U.S. 493, 33 L. Ed. 2d 83, 92 S. Ct. 2163; *Sims v. Georgia* (1967), 389 U.S. 404, 19 L. Ed. 2d 634, 88 S. Ct. 523; *Jones v. Georgia* (1967), 389 U.S. 24, 19 L. Ed. 2d 25, 88 S. Ct. 4; *Whitus v. Georgia* (1967), 385 U.S. 545, 17 L. Ed. 2d 599, 87 S. Ct. 643; *Coleman v. Alabama* (1964), 377 U.S. 129, 12 L. Ed. 2d 190, 84 S. Ct. 1152; *Avery v. Georgia* (1953), 345 U.S. 559, 97 L. Ed. 1244, 73 S. Ct. 891; *Patton v. Mississippi* (1947), 332 U.S. 463, 92 L. Ed. 76, 68 S. Ct. 184; *Hale v. Kentucky* (1938), 303 U.S. 613, 82 L. Ed. 1050, 58 S. Ct. 753; *Hollins v. Oklahoma* (1935), 295 U.S. 394, 79 L. Ed. 1500, 55 S. Ct. 784; *Norris v. Alabama* (1935), 294 U.S. 587, 79 L. Ed. 1074, 55 S. Ct. 579; *Martin v. Texas* (1906), 200 U.S. 316, 50 L. Ed. 497, 26 S. Ct. 338; *Neal v. Delaware* (1881), 103 U.S. 370, 26 L. Ed. 567; *Strauder v. West Virginia* (1880), 100 U.S. 303, 25 L. Ed. 664.) Does *Swain* require the application of a different rule to the selection of the jury members? In my view *Swain* does not require the elevation of section 115—4(e) of the Code of Criminal Procedure of 1963 (Ill.

Rev. Stat. 1981, ch. 38, par. 115—4(e)), relating to peremptory challenges, to a position paramount to the fair trial provisions of the sixth amendment of the Constitution of the United States. In *Swain* the court said:

> "[W]hen the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. Cf. *Yick Wo v. Hopkins*, 118 U.S. 356. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify." 380 U.S. 202, 223-24, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837-38.

The question posed by this appeal is does the instant case meet this *Swain* test: Did the State's systematic striking of Negroes in the selection of the petit jury raise a *prima facie* case of constitutional violation? It is the jury that sits in the box and hears the case, not the jury pool, that is the essential element of a fair trial. If the State uses the peremptory system to deny nonwhites the same right and opportunity to sit on juries enjoyed by whites, this would thwart efforts for a fair trial no matter how unbiased the jury pool selection and other pretrial procedures are. The State's use of peremptory challenges here, and consequently the selection of jurors, was on the basis of race. Members of a venire are not required to announce their race, religion or ethnic origin. This makes it difficult to record a prosecutor's racially motivated strategies. However, here defense counsel, through patient, polite, persistence, made and preserved the record of the State's use of nine of its 10 peremptory challenges against nonwhite jurors. As Justice Marshall wrote in *McCray*, "When a prosecu-

tor uses several peremptory challenges to exclude every potential Negro juror, there is strong circumstantial evidence that the exclusions are racially motivated and therefore in violation of the defendant's Sixth Amendment right." 51 U.S.L.W. 3855, 3856.

Additionally, *Swain* and the cases which followed suggest that the systematic exclusion of nonwhites by peremptory challenges in case after case is necessary to raise a constitutional issue. Regarding this *Swain* requirement, Justice Marshall in *McCray* wrote, "Since *every* defendant is entitled to equal protection of the laws and should therefore be free from invidious discrimination of state officials, it is difficult to understand why several must suffer discrimination because of the prosecutor's use of peremptory challenges before any defendant can object." (51 U.S.L.W. 3855, 3855-56.) However, in the context of the instant case, this *Swain* requirement need not bar defendant from asserting his sixth amendment right. This court and the circuit court of Cook County can take judicial notice of the number of cases in that court in which arguments similar to those of this defendant have been raised. *State v. Brown* (La. 1979), 371 So. 2d 751.

In *People v. Gosberry* (1982), 109 Ill. App. 3d 674, 440 N.E.2d 954, this court listed 27 cases in which the issue of the use of peremptory challenges to exclude nonwhites from a jury in a criminal case was raised on appeal. The *Gosberry* court observed that all but four of these cases were tried in Cook County. (109 Ill. App. 3d 674, 682-83.) Following *Gosberry*, there have been at least nine additional cases which have addressed this issue. They are: *People v. Williams* (1983), 97 Ill. 2d 252; *People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353; *People v. Logan* (1983), 117 Ill. App. 3d 753; *People v. Withers* (1983), 115 Ill. App. 3d 1077; *People v. Jones* (1983), 114 Ill. App. 3d 576; *People v. Gilliard* (1983), 112 Ill. App. 3d 799, 445 N.E.2d 1293; *People v. Osborn* (1983), 111 Ill. App. 3d 1078, 444 N.E.2d 1158; *People v. Newsome* (1982), 110 Ill. App. 3d 1043, 443 N.E.2d 634; and *People v. Turner* (1982), 110 Ill. App. 3d 519, 442 N.E.2d 637. All but two of these cases were tried in Cook County.

The record here shows that the State used peremptory challenges, with one exception, to bar blacks and hispanics from the jury. The number of criminal cases arising from Cook County where similar conduct is charged indicates that this was not an isolated case, but that indeed the same use of peremptory challenges by the State occurs in case after case. This meets the *Swain* test. I would not, as the majority opinion does, place the State's peremptory challenge beyond realistic scrutiny and convert the challenge from a device for protecting defendants into a tool for restricting the availability of a fair trial

before an impartial jury. The majority correctly cites *People v. Williams* as authority for this position, and although it goes contrary to all I have observed above, I am compelled by *stare decisis* to concur.