THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID TUCKER, Defendant-Appellant.

Second District    No. 79-643

Opinion filed August 20, 1981.

Mary Robinson and Elizabeth Clarke, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

David Tucker was found guilty by a jury in Lake County of one count of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)), and two counts of attempt murder (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a)). The court sentenced him to 25 years imprisonment for armed robbery and two concurrent terms of 30 years imprisonment for the attempt murder convictions, to be served consecutively and resulting in a term of confinement of 55 years.

The State Appellate Defender raises two issues on appeal and the defendant raises additional issues in his *pro se* briefs. The first question raised is whether the trial court erred in denying defendant's motion to

appoint counsel other than the public defender for the defendant. The second argument posed is whether the trial court erred in imposing consecutive sentences. Defendant's brief urges that he was deprived of effective assistance of counsel, that the testimony of his expert witness was improper, that the jury selection process was discriminatory in that it eliminated blacks from the jury and finally that he was prejudiced by the closing argument of the prosecutor.

At trial, the first witness for the State was an employee of an Eagle Food Store. He testified as follows. On the evening of January 25, 1979, the manager had let him out of the locked side door of the store and as he was walking to his car he was confronted by a man wearing a black leather jacket and ski mask that covered his face. The man was crouched between some parked cars and was armed with a .357 Magnum and a sawed-off shotgun. The man began to stand up and said, "Don't move or I will blow you away." The man handed the employee a brown paper bag and told him that he was going to fill the bag with money. The man asked if there was any security in the store and when he was told that the door was locked the man said, "You're going to get me in the store any way possible." He also noticed a Cadillac parked in the lot and inquired as to who owned it; he was told that it belonged to the manager of the store.

As the man and the employee reached the door of the store, another employee came out and the man stated that they were all going to go back inside the store. The manager came to the door and let all three of them inside. All 10 employees who were in the store at that time were told to lie down on the floor by the office, except the manager who was told to open the safe. The manager, John Price, testified that he was wearing a name tag that identified him as the store manager. He further testified that he opened the safe and removed all the cash including a bag of approximately $1,000 worth of coins that weighed about 35 pounds. While he was taking the money out of the safe, the defendant hit him below his neck with the shotgun and told him to hurry. When the manager pulled the bag of coins out he heard the pistol go off and the manager dropped to the floor. Defendant told him to get up and that he was not shot and then asked the manager for the keys to his car, "his Caddy." The manager remained lying down and gave the defendant the keys to his 1976 Cadillac which was parked outside of the store. Defendant left the store, and an employee sounded an alarm that alerted the police of an armed robbery, and the police arrived soon thereafter.

Officers Caliendo and Mead found a number of fresh footprints and scattered $20 bills upon their arrival at the scene. Mead testified that Caliendo climbed a snowbank to get a better view of the area and that he then heard Officer Caliendo say, "Freeze, police officer" and "Come out of the hole." He testified that he saw two orange flashes come from an

indentation in the snowbank and at that moment heard the sounds of gunfire. He stated that the first shot went into Officer Caliendo's chest and the second went past him. Officer Mead called for help on his radio and watched the snowbank. Upon seeing a subject come out of the hole, he fired and the subject fell or jumped back into the hole.

Officer Ford then arrived on the scene and started up the hill despite Mead's warning that the subject was in a hole near the snowbank. Mead stated that he then saw two orange flashes and saw Officer Ford discharge his weapon several times before falling back against the wall. Ford received one wound in each leg.

Three officers then rushed the hole, disarmed and handcuffed the suspect. The defendant's ski mask was removed. It was determined that he received a superficial injury to the muscles of his face. A bag of money was recovered, and a total of $27,201 was recovered from the scene.

Dr. Ronald Baron, a psychiatrist, testified for the defense. He testified that the defendant suffered from an acute brain syndrome; that he had examined the defendant five times but had difficulty in talking with him. The doctor could only establish that the defendant may have had such a mental disorder so that he could not conform his conduct to the law. He testified that the defendant's brain syndrome was due to cocaine intoxication that had caused an altered mood. The defendant had told the doctor that on the day of the robbery he had taken seven doses of cocaine, totaling one gram. The doctor testified that he did not think that the defendant had a clear-cut confusional state but that he was unsure because the defendant would not co-operate with him. On cross-examination, Dr. Baron testified there was a 60-percent chance that the defendant could conform his conduct to the law and a 40-percent likelihood that he could not.

Dr. Tuteur testified for the State and stated that there was no mental disease at the time of the crime that would have substantially incapacitated the defendant from knowing that he was committing a crime. Twenty-eight other witnesses, employees of the grocery store and police officers, testified about the circumstances surrounding the crime for the State.

The jury returned a verdict of guilty for two counts of attempt murder, two counts of armed violence, two counts of aggravated battery and one count of armed robbery.

At the sentencing hearing, the verdicts of armed violence and two counts of aggravated battery were vacated as lesser included offenses. The court, in considering the sentencing alternatives, noted that the armed robbery was planned, that the defendant emphasized speed during the robbery and that his escape was hampered only by the quick response of the police. In mitigation the trial court noted that the

610

defendant had no serious previous record of conviction and had a substantial period of steady employment. He stated that the sentence was to be 25 years for the armed robbery; less than the maximum because of the mitigation factors, but necessary to deter others from committing the same crime and to protect the public.

The court noted that section 1005—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a)) provides that "[t]he court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct * * *." The court found that there were two courses of conduct in this case, first in the planning and execution of the robbery and second, in the shootings which occurred thereafter during the escape. The court also noted that consecutive sentences could not be imposed unless it was of the opinion that such terms were required to protect the public from further criminal conduct. The court stated that the requirements of consecutive sentences were not only met but demanded in this case. In addition to the 25-year sentence, the defendant was to serve 30 years for the attempt murder of Officer Caliendo and a concurrent 30-year term for the attempt murder of Officer Ford, resulting in a total of 55 years.

The defendant's first argument on appeal is that the trial court erred in denying his request for a new attorney outside of the public defender's office. He urges that this constituted a denial of his right to counsel. The morning after the robbery, when defendant was served with the complaint, he was told that he was entitled to have an attorney and at that time he requested that a public defender be appointed for him.

Eight months later and three days before the trial, the defendant requested, in a letter to the judge, that an attorney outside of the public defender's office be appointed by the court to represent him. The report of proceedings for that date indicated that the basis for the defendant's request was that his public defender lacked interest in his case and had taken too much time in trying to obtain a change of venue. The court noted that the defendant's public defender had made arrangements for the defendant to be examined by a psychiatrist, had made a motion for a change of venue and other motions which, the court stated, indicated that the defendant's attorney was interested in the case and had been performing competently. Defendant's motion was denied.

■■ The right to counsel guaranteed by the sixth and fourteenth amendments to the United States Constitution, by article I, section 8 of the Illinois Constitution and section 113—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 113—3), entitles one to be represented by counsel of one's choice. (*People v. Green* (1969), 42 Ill. 2d 555, 557.) This right, however, is not without limitations. It does not follow that an indigent defendant has the right to choose among appointed counsel.

*People v. Cox* (1961), 22 Ill. 2d 534, 537, *cert. denied* (1963), 374 U.S. 855, 10 L. Ed. 2d 1076, 83 S. Ct. 1925.

Section 113—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 113—3(b)) provides in pertinent part:

"If there is no Public Defender in the county or if the defendant requests counsel other than the Public Defender and the court finds that the rights of the defendant will be prejudiced by the appointment of the public defender, the court shall appoint as counsel a licensed attorney at law of this State * * *."

■■ ■ An indigent defendant is entitled to counsel other than the public defender only upon a showing of good cause and it is within the trial court's discretion to deny such a request. (*People v. Johnson* (1974), 24 Ill. App. 3d 152.) It has also been held that a defendant does not have a constitutional right to counsel other than the public defender or an unqualified right to substitute appointed private counsel at any stage of his trial. *People v. DeMary* (1967), 37 Ill. 2d 364.

*Green,* cited by defendant, is inapposite. In *Green* the defendant had already retained private counsel, who was unable to appear. The court denied defendant's request to continue the matter so he could be represented by his attorney and made no inquiry into the truth or circumstances described by the defendant. *Green* held that the defendant's right to counsel was violated when the court made no such inquiry and insisted that defendant go to trial, represented by a public defender who had no opportunity to investigate the case.

■■ In contrast to *Green,* the trial court in the case before us did not summarily deny defendant's request but rather, after asking questions, determined that the request was without basis and therefore should be denied. Further, defendant's attorney had ample time for investigation and preparation. Defendant's request was properly denied.

The defendant also contends that the trial court erred in imposing consecutive sentences for attempt murder and armed robbery arising out of the same occurrence, since it did not adequately set forth the basis for such consecutive sentences.

Section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)) states in pertinent part as follows:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

We think this contention is without merit. The trial judge's remarks at the sentencing hearing clearly indicate that he was of the opinion that the

nature and circumstances of the offense required a consecutive sentence. The judge said at the sentencing hearing:

"The court can further not impose consecutive sentences unless, having regard to the nature and circumstances, [it] is of the opinion that such terms are required to protect the public from further criminal conduct. It is abundantly clear that in this case the requirements of consecutive sentences are not only met but are demanded.

Under the totality of the circumstances, the Court finds this to be the proper case for consecutive sentences; and it is the duty of the Court to impose such."

■■ In view of these remarks, we see no ground for the defendant's contention that the trial court did not comply with the statute in imposing the consecutive sentences. That the trial court based the consecutive sentences on its opinion that this was necessary for the protection of the public is clearly indicated by its reference to the nature and circumstances of the crime, followed by its statement that considering the "totality of the circumstances" it was the trial court's duty to impose such sentences. We think the logical inference of this remark is that the trial court felt it necessary to protect the public from further similar conduct of the defendant. The cases cited by the defendant where the appellate court modified or reversed consecutive sentences are not apposite. *People v. Zadel* (1979), 69 Ill. App. 3d 681, differs from the present case because there the defendant, who had escaped to Canada following a conviction for murder and was wanted in Illinois for robbery, had lived a crime-free life for five years in Canada and had married and had a family prior to his extradition to Illinois. The additional prison term was not deemed necessary for the protection of the public in view of the defendant's apparent rehabilitation. In *People v. Henry* (1977), 47 Ill. App. 3d 545, the appellate court remanded the case for a new sentencing hearing because the trial court in imposing consecutive sentences did not express its opinion with reference to the circumstances of the actual crime the defendant was convicted of but devoted his remarks to the defendant's history of involvement with drugs, without indicating any opinion arising out of the background of the present crime. This required remandment for clarification. *People v. Pace* (1975), 34 Ill. App. 3d 440, was a case of a sudden irrational battery by the defendant against a total stranger, while the defendant was highly intoxicated. It was not, as in the present case, a premeditated crime. In the cases cited, either the trial court did not express an opinion based on the history of the defendant and the circumstances of the crime, or the circumstances were felt by the appellate court not to justify an opinion that consecutive sentences were required for the protection of the public. Here we think the circumstances were

such as to justify some apprehension as to the danger the defendant might pose to the public, and the trial court clearly indicated its opinion that such sentence was required, having regard to the nature and circumstances of the offense and considering the possible danger to the public. We therefore think the trial court acted within the spirit and intent of the statute in imposing consecutive sentences.

The remaining issues are raised by the defendant in his *pro se* brief. The first issue alleges that he was deprived of the effective assistance of counsel. He argues that only one psychiatrist was appointed for him and this was insufficient. He urges that it was insufficient for his attorney to have cross-examined only one of the State's witnesses and that his attorney's post-trial motion was not supported by an argument.

■■ The State contends that the instances complained of by the defendant are decisions of trial strategy and that such decisions are not to be examined by courts of review. (*People v. Greer* (1980), 79 Ill. 2d 103.) The standard for determining whether defendant received effective assistance of counsel is whether or not his appointed counsel was actually incompetent and if his incompetency produced substantial prejudice to him without which the result of the trial would probably have been different. (*Greer*, at 120.) Applying the *Greer* standard, even if defendant's attorney were incompetent, it is quite unlikely that the outcome would have been any different. Defense counsel prepared a defense and argued it competently before the jury. The defense was that the defendant was suffering from an acute brain syndrome or cocaine intoxication at the time of the offense and this was explained by a qualified expert witness.

Defendant's argument that his attorney was also acting as a prosecutor is not well founded and is based on testimony taken out of context. The statement made by defendant's attorney that he only used one expert when he was a prosecutor was made in response to the State's request for more experts. Defendant's attorney was arguing that one expert on each side would be sufficient and more equitable.

■■ The defendant's attorney's decision not to cross-examine State witnesses, except the expert psychiatric witness, was likely one of strategy. Cross-examination of State's witnesses may not have been productive and may have only served to reemphasize his guilt. Defendant's contention that his attorney agreed to or requested too many continuances is not supported by the facts. Many of the continuances were requested to accommodate the defendant's case and there was not, as defendant contends, a motion for a speedy trial on record. We see no showing of actual incompetency or substantial prejudice.

■■ Defendant next contends that he was denied a fair trial because he had an all-white jury. He contends that the State discriminated in the jury selection process by eliminating all blacks in its peremptory challenges.

However, because there was not objection or post-trial motion, defendant's argument is waived for purposes of appeal. There is nothing in the record to support his claim. *People v. Pickett* (1973), 54 Ill. 2d 280.

■■ Even assuming defendant's argument was not waived on appeal, a prosecutor in Illinois is presumed to be using the State's challenges fairly, absent a showing of a systematic pattern of the exclusion of a particular racial group. (*Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824.) Here defendant made no showing of such a pattern.

■■ An argument similar to the defendant's was presented in *People v. Fleming* (1980), 91 Ill. App. 3d 99, where the court held that peremptory challenges are a substantial right which should not be abridged. The court stated that one who exercises a peremptory challenge need not explain the basis for that challenge. We agree with this principle.

■■ Defendant's final contention alleges that the prosecutor's closing argument was improper and that he suffered prejudice as a result thereof. We have examined the closing arguments and do not find the statements that were made to be improper. Further, we note that no objection to them was made at trial and that defendant's argument was not properly preserved for appeal. *People v. Edwards* (1973), 55 Ill. 2d 25.

For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

REINHARD, J., concurs.

Mr. JUSTICE HOPF, concurring in part and dissenting in part:

I concur with the majority in affirming the conviction of the defendant of the crimes as charged. As to the question of the propriety of the trial court's procedure in sentencing the defendant to consecutive terms in the State penitentiary, I dissent.

At the sentencing hearing the court noted that consecutive sentences could not be imposed unless it was "* * * of the opinion that such terms were required to protect the public from further criminal conduct." This is not an entirely correct statement of the law. Section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)) provides, "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Specifically the court has left off the words "by the

defendant." This leads to a question of whether the court could have been considering other matters, such as deterrence of crime generally.

It should also be noted that the legislature rewrote subsection (b) effective February 1, 1978, and changed the law which was in existence which read as follows: "* * *, the basis for which the court *may* set forth in the record," and changed that clause to read "* * * the basis for which the court *shall* set forth in the record," making this recitation mandatory. The majority deemed that the statements made by the court at the time of meting out the consecutive sentences met these requirements. I disagree.

There is no question that the character of the crimes and the attending circumstances were of a violent nature and possibly would have merited the imposition of an extended term pursuant to section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2). However, to qualify for the imposition of consecutive sentencing there is the qualification that the sentence be necessary to protect the public from *this defendant. People v. Bolden* (1978), 62 Ill. App. 3d 1009.

The language used by the trial court as stated earlier appears to be somewhat confusing and could have been as apropos of the violent nature and character of the crimes as it could be to the necessity of protecting the public from this defendant.

Further the court pointed out that it had considered certain mitigating factors and for this reason sentenced the defendant to less than the maximum or 25 years for armed robbery. Then the court sentenced the defendant to concurrent terms of 30 years for the attempt murders to run consecutive to the armed robbery sentence. I find this to be somewhat contradictory.

I believe any confusion that exists could have been clarified had the court specifically set forth in the record what factors it considered in arriving at its decision that a consecutive sentence was necessary to protect the public from this defendant. I would have remanded the case to the trial court for a clarification and resentencing. *People v. Henry* (1977), 47 Ill. App. 3d 545.