THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BOOKER VAUGHN, Defendant-Appellant.

First District (4th Division)    No. 79-1770

Opinion filed October 15, 1981.

Ralph Ruebner and Nancy Abrahams, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Alexander Vroustouris, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

Following a jury trial defendant Booker Vaughn was convicted of two counts of attempted murder, two counts of armed robbery, one count of attempted armed robbery, and one count of unlawful restraint. For these crimes he was sentenced to concurrent terms ranging from 20 to 30 years for each count of armed robbery to one to three years for unlawful restraint. The sole issue on appeal is whether the trial court erred in refusing to declare a mistrial or hold an evidentiary hearing on the basis of defendant's contention that the prosecution used its peremptory challenges to systematically exclude blacks from jury service solely because of their race.

We affirm.

Because of the narrow focus of defendant's contention we summarize only that portion of the proceedings below relating to jury selection. We do note, however, that our review of the entire record on appeal has established to our satisfaction that defendant was convicted on the basis of proper and sufficient evidence.

After jury selection began a mistrial was declared on defendant's motion because of potentially prejudicial remarks made by one prospective juror. The following day selection began anew with another venire. When the trial court made a general inquiry as to whether any prospective jurors knew any of the parties one man responded that he was the United Parcel Service delivery man for one of defendant's attorneys. Without objection from defendant the court excused that man. A second potential juror was excused by the court because she knew one potential police witness and indicated this might affect her determination of his credi-

bility. Defense counsel then objected to the dismissal of the prior potential juror, asserting that his status as a delivery man for one of defendant's attorneys was not in itself a sufficient basis for disqualification. (In response to this the court noted that it customarily excused any potential juror who knew any of the parties.) Counsel further noted that this left only one black out of a venire of 33 people, and he predicted that the prosecution would use its peremptory challenges to obtain an all-white jury to try the defendant, who was black. Counsel moved that jury selection be postponed until additional black prospective jurors could be available. The court considered this as a challenge to the jury panel and denied the motion.

After the court questioned a number of potential jurors the court reporter was excused without objection from either side. The record on appeal thus indicates only that thereafter a jury was selected and duly empaneled; those proceedings were not transcribed. The court then stated:

> "The jury selection is complete and [defense counsel] has indicated that he is going to, on Monday, file a motion charging the State with a systematic exclusion of blacks from the jury by the use of his pre-emptories [sic] and the facts were that there were thirty-five jurors in the original venire, ten additional jurors were brought up. Of those forty-five jurors there were four blacks. The State excused three and the Court excused one on its own motion."

The prosecutor noted for the record that both sides had used a total of 11 peremptory challenges, the court having granted each side one additional challenge.

Thereafter, defendant filed a motion for an evidentiary hearing at which, he contended, he could establish that the prosecution used its peremptory challenges to exclude all blacks from the jury. This was done, defendant alleged, as part of a plan, practice, custom and usage in Cook County which violated defendant's right to a fair and impartial trial by depriving him of a jury from which no cognizable group in society was systematically excluded. He alleged that the result was the selection of an all-white jury in a case in which the alleged victims were "primarily" white and the defendant was black.

In argument on the motion the prosecution noted that one of the three black potential jurors was excused by them because he had been sleeping during the court's examination. Defense counsel did not seek to counter this contention but substantially relied on his motion as having sufficiently raised the issue to require a hearing. The court denied the motion, finding that defendant had not alleged sufficient facts to require a hearing.

## I

In *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, a black defendant convicted of rape by an all-white jury challenged his conviction on the ground that the prosecution had violated his fourteenth amendment right to equal protection of the laws by striking from the venire all blacks through the use of the Alabama equivalent of peremptory challenges. After reviewing the history of peremptory challenges the court stated:

"* * * we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto*, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence the motion to strike the trial jury was properly denied in this case." (380 U.S. 202, 221-22, 13 L. Ed. 2d 759, 773, 85 S. Ct. 824, 836-37.)

In dictum concurred in by only four justices the court also indicated that a violation of the fourteenth amendment might be established upon a showing that the prosecution had systematically, in case after case, removed all black jurors who survived challenge for cause so that no blacks ever served on petit juries.

Even prior to the *Swain* decision the Illinois Supreme Court had

denied a similar challenge to such a use of peremptory challenges. (*People v. Harris* (1959), 17 Ill. 2d 446, 161 N.E.2d 809, *cert. denied* (1960), 362 U.S. 928, 4 L. Ed. 2d 747, 80 S. Ct. 755.) In subsequent cases that court has adhered to the holding in *Swain. (People v. Butler* (1970), 46 Ill. 2d 162, 263 N.E.2d 89; *People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731.) Nonetheless, defendant asks this court to go beyond those holdings and to adopt the rationale of the California Supreme Court in *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890. That court, while recognizing the apparent continuing validity of *Swain*, held that the use of peremptory challenges to remove prospective jurors solely on the ground of group bias, that is on the presumption they are biased merely because they are members of an identifiable group distinguishable by classifications like race or religion, violated the California constitution's guarantee of the right to trial by a jury drawn from a representative cross-section of the community. The *Wheeler* court held that in any individual case it would be presumed that peremptory challenges were exercised on proper grounds. But it then set forth the manner in which a party could overcome this presumption:

"If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. First, as in the case at bar, he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (22 Cal. 3d 258, 280, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905.)

The court also gave examples of evidence relevant to such a showing:

"Thus the party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group. He may also demonstrate that the jurors in question share only this one characteristic—their membership in the group—and that in all other respects they are as heterogeneous as the community as a whole. Next, the showing may be supplemented when appropriate by such circumstances as the failure of his opponent to engage these same jurors in more than desultory voir dire, or indeed to ask them any questions at all. Lastly * * * the defendant need not be a member of the excluded group in order to complain of a violation of the representative cross-section rule; yet if he is, and

especially if in addition his alleged victim is a member of the group to which the majority of the remaining jurors belong, these facts may also be called to the court's attention." (22 Cal. 3d 258, 280-81, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905-06.)

Under *Wheeler* if the court then finds that a prima facie case has been made that peremptory challenges were used solely on the ground of group bias the burden would shift to the other party to disprove this.

No Illinois court to date has adopted the *Wheeler* holding and methodology. (See *People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029, where the court did not reach the issue; *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117, where in dictum the court indicated that in a proper case it would follow *Wheeler*; and *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330, where the court declined to follow *Wheeler*, criticizing it as vague and uncertain.) But like the court in *Bracey*, we do not find it necessary to determine whether we should follow *Wheeler*. Even under the standards set out in *Wheeler* defendant has failed to establish a prima facie case of discrimination. Defendant failed to obtain a record of the entire voir dire; the court excused the court reporter from most of the proceedings without objection from counsel. At the hearing on defendant's motion, he merely relied on the allegations in his motion, which were conclusory in nature. Indeed, the only reference to the specifics of what had occurred during voir dire was that of the prosecutor, tending to indicate that at least as to one of the jurors at issue there was a specific basis other than race for the prosecutor to seek exclusion. But on the state of this record, we could only speculate as to whether similar grounds were evident for the other excused jurors. We are thus precluded from examining such factors as the nature of the questioning which did take place or whether the excused jurors shared only the distinguishing characteristic of race. These are of course factors singled out by the *Wheeler* court, whose decision defendant asks us to adopt. We thus find no basis for disturbing the determination of the trial court.

The judgment of the trial court is affirmed.

Affirmed.

JIGANTI and LINN, JJ., concur.