THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STEVEN GILLIARD, Defendant-Appellant.

First District (3rd Division)   No. 81—913

Opinion filed February 16, 1983.

McNAMARA, P.J., dissenting.

James J. Doherty, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lester M. Joseph, and Larry J. Crown, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

A jury found defendant, Steven Gilliard, guilty of robbery. Defendant, who is black, contends that the trial court erred in denying his motion for a mistrial because the prosecutor systematically used peremptory challenges during the *voir dire* examination of the prospective jurors to exclude blacks from the jury solely because they were blacks. It is defendant's position that he was denied the type of fair trial guaranteed under the sixth amendment of the United States Constitution because the State affirmatively frustrated his right to a

jury drawn from a fair cross section of the community. We reverse the conviction and remand the case for a new trial.

The record demonstrates that the procedure for the selection of the jury began with the trial judge interrogating the prospective jurors. The attorneys then interrogated the prospective jurors in panels of four. The first panel contained one black and three whites. The State exercised a peremptory challenge to excuse the black. When another black was called to fill the panel, she, too, was excused by the State by the use of a peremptory challenge. When accepted, the first panel of jurors did not contain any blacks. The second panel contained no blacks at any time. The third panel contained three white prospective jurors and one black prospective juror. The State exercised a peremptory challenge to excuse the black, and the black was replaced by a white. When accepted, the third panel of jurors did not contain any blacks. One of the two alternate jurors who was selected was black. However, the trial court noted in the record that by that time the State had exercised all of its peremptory challenges, and the State "really had no choice" but to accept the black as an alternate juror. Defendant did not exclude any black prospective jurors.

After the jury was selected, defendant moved for a mistrial on the basis that the State had systematically excluded all the black prospective jurors from the jury, in violation of the rights guaranteed him under the Constitution of the United States. The jury cards were made part of the record in conjunction with the motion. The prosecutor objected to the motion, and as his reasons for opposing the motion, he stated that defendant did not prove why the State excluded the black prospective jurors and that the State did not have to give any reasons for excluding the black prospective jurors. The prosecutor then cited and discussed *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, in which the Supreme Court held that the systematic striking of all blacks from the jury by the State in a single case did not violate the equal protection standard of the fourteenth amendment of the United States Constitution. The following statements were then made:

> "[The prosecutor]: The People do not have to tell this Court why they excluded anyone from that jury. It [*Swain*] further says it's without inquiry and without being subject to Court's control. The whole basis and fact of the word 'peremptory challenge,' allows the State to exclude persons without telling you why.
>
> We would further like to call the Court's attention to People versus Fleming—

\* \* \*

The court: Because you cited sufficient cases for appeal, there is no legal basis for a mistrial, Mr. [defense counsel].

[The prosecutor]: Could we do one more case?

The court: I have the jury waiting.

[The prosecutor]: If they appeal it—

The court: They can't appeal it because the law is to the contrary, legally.

The legal basis, the cases, I have read them, I have read these that you have read plus others, but, however, I will say this:

I think that the attitude—I am not speaking of you individuals, I am talking about the attitude of the State's Attorney's Office, period. I find this is morally reprehensible and in my opinion there is a purposeful discrimination, in my opinion. It's an invidious discrimination. It's a bad policy that they have and I find the State's Attorney's attitude and policies towards removal of Black people from the jury is, to me, is personally offensive not only as a Black person, but as a Black lawyer and a Black judge.

Now, the first panel we selected, the State exercised three challenges, two of whom were Black ladies and the second panel, there were no Blacks in that group, so there was one challenge to one White person a Mr. Finney, and the third panel, there was one Black male and three Whites excluded.

\* \* \*

In my past experience I found this same policy, the same procedures followed.

All right. Your motion is denied.

\* \* \*

[The prosecutor]: If you say it's purposeful, you have to exclude the jury.

The court: I said it's my opinion, but it's not the law."

On appeal, the State argues that "a prima facie case of racial discrimination could never be established in just one particular case, even if in that case, all Blacks were excluded for the sole reason that they were Black." We flatly rejected this argument in *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046, *appeal allowed* (1982), 91 Ill. 2d 578. In *Payne*, we held that the State's systematic exclusion of prospective jurors in any given case solely because of their race is invidious and unconstitutional at any stage of the jury selection. We based our decision in *Payne* on the defendant's right to an impartial

jury under the sixth amendment and upon the roles of the State, the prosecutor and the court itself in a criminal trial.

We believe that the present case truly demonstrates the value and importance of *Payne*. In this case, a trial judge experienced in conducting *voir dire* examinations concluded that the State was following the "same policy" and the "same procedures" of "invidious discrimination" that the State has followed in the past when selecting a jury. Although the trial judge found this "morally reprehensible," he felt compelled by the insuperable burden imposed upon a defendant in *Swain*[1] and its progeny to deny defendant's motion for a mistrial. *Payne* unshackles trial judges in these situations and permits them to maintain justice and the appearance of justice in their courtrooms by allowing them to require the prosecutor in such situations to make a showing that he is not systematically excluding blacks from a jury solely because of their race.

In *Payne*, we held that in any given case, when it reasonably appears to the trial court, either by its own observation or after motion by the defendant, that the prosecutor is using peremptory challenges to systematically exclude blacks from the jury solely because they are blacks, the court should require the prosecutor to demonstrate, by whatever facts and circumstances exist, that blacks were not being systematically excluded from the jury solely because they were blacks. At this stage, the burden of demonstrating that the Constitution was not being violated is upon the prosecutor. If the trial court finds that as to any of the questioned challenges the State has not sustained its burden of demonstrating that it was not excluding blacks from the jury solely because they were blacks, the court must then conclude

---

[1] In *Swain*, the court stated that a defendant may establish a *bona fide* equal protection violation only if he could show "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be," that the prosecutor "is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever served on petit juries." (380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) It is doubtful that our courts maintain the comprehensive records of peremptory challenges "in case after case" that would be necessary to sustain a defendant's burden under *Swain*. As an example, it is unlikely that there are very many cases in which the races of excluded jurors would be indicated in the court records, let alone the circumstances under which the jurors were excluded. In *Commonwealth v. Soares* (1979), 377 Mass. 461, 475-76 n.10, 387 N.E.2d 499, 509 n.10, the possibility of a defendant being able to sustain his burden under *Swain* was described as "illusory." Moreover, it is obvious that under the "case after case" requirement, the first few defendants to be unconstitutionally deprived of an impartial jury by the prosecutor's use of peremptory challenges would not be able to sustain their burden of showing that their constitutional rights had been violated.

that the jury as constituted at that point fails to comply with the fair-cross-section requirement of the Constitution, and it must dismiss the jurors thus far selected. Also, it must quash the remaining venire, since the accused is entitled to a random draw from an entire venire, not one that has been partially or totally stripped of a cognizable group by unconstitutional means. Upon such dismissal, a different venire should be drawn, and the jury selection process should begin again. 106 Ill. App. 3d 1034, 1040, 436 N.E.2d 1046, 1050-51.

■ Here, after it reasonably appeared to the trial judge, as demonstrated by his observations and statements that appear on the record, that the State was using peremptory challenges to systematically exclude blacks from the jury solely because they were blacks, the trial judge should have required the State to demonstrate, by whatever facts and circumstances existed, that blacks were not being systematically excluded solely because they were blacks. The failure of the trial court to impose such a requirement on the prosecutor at that stage was error, and the error was of such magnitude that the conviction must be reversed and the case remanded for a new trial. *People v. Payne* (1982), 106 Ill. App. 3d 1034, 1045-46, 436 N.E.2d 1046, 1054; *People v. Gosberry* (1982), 109 Ill. App. 3d 674, 678, 440 N.E.2d 954, 958.

The State argues that because there is no transcript of the attorneys' *voir dire* examination of the prospective jurors,[2] the record is not sufficient to support defendant's argument. However, in making his motion for a mistrial, defense counsel specified for the record the circumstances under which the State used its peremptory challenges, and defense counsel made the jury cards part of the record. In addition, the trial judge had interrogated the prospective jurors, and when he made his express finding that there was purposeful discrimination against blacks by the State in selecting the jury, he expressly included on the record what had occurred during the jury selection. Under the circumstances, the State's argument is unavailing.

The State next contends that the record is not sufficient to support defendant's argument because the trial judge did not permit the prosecutor to make a complete record The pertinent part of the record on this point has been set forth earlier in this opinion. It shows that the trial judge merely precluded the prosecutor from citing an additional case authority after the judge had already decided to deny defendant's motion. We therefore conclude that the State's contention

---

[2]The court reporter was excused by both the State and defendant during this part of the *voir dire* examination.

is without merit.

Although we base our decision in this case on *Payne*, we recognize that another division of this court has recently disagreed with *Payne*. (*People v. Newsome* (1982), 110 Ill. App. 3d 1043.) In our judgment, *Newsome* merely reiterates the arguments made in *Swain* and its progeny, without any meaningful change, improvement or benefit. *Newsome*, like *Swain* and the other cases relied upon in *Newsome*, is based solely on the fourteenth amendment, whereas *Payne* is based on the sixth amendment.[3] Plainly, the two amendments are not the same.[4] Unlike the nebulous and indefinite equal protection standard of the fourteenth amendment, the sixth amendment guarantee of an impartial jury in criminal cases is specific and certain.

By totally ignoring the defendant's rights under the sixth amendment, *Newsome* disregards the distinction between the rights of a defendant under the sixth amendment and the fourteenth amendment. The *Newsome* court apparently assumes that whether a sixth amendment right or a fourteenth amendment right is involved in these cases, the issue remains the same—the power of the State to exercise peremptory challenges. However, the standard of judicial review is determined by the nature of the constitutional right assertedly threatened or violated rather than by the power being exercised by the State. (*Cf. Schad v. Borough of Mount Ephraim* (1981), 452 U.S.

---

[3]In this regard, *Newsome* misreads *Payne* when it states that *Payne* is the first Illinois case to adopt *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890 (which prohibits the State's use of peremptory challenges to remove prospective jurors based solely on group bias). (110 Ill. App. 3d 1043, 1053.) While *Payne* agrees with the rationale and holding of *Wheeler* in all respects, *Payne* is based on the sixth amendment of the Constitution of the United States, whereas *Wheeler* is based solely on a particular provision of the California Constitution.

[4]The distinction between the two amendments is manifest in *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, where the court held that a Louisiana statute exempting women from jury service unless they chose to serve was unconstitutional because the systematic exclusion of women from jury panels from which petit juries are drawn violates the fair-cross-section rule of the sixth amendment. In reaching its conclusion, the court distinguished *Hoyt v. Florida* (1961), 368 U.S. 57, 7 L. Ed. 2d 118, 82 S. Ct. 159, where a challenge to a similar statute on the basis of the fourteenth amendment had been rejected. The *Taylor* court stated: "It is true that *Hoyt* *** held that such a system did not deny due process of law or equal protection of the laws because there was a sufficiently rational basis for such an exemption. But *Hoyt* did not involve a defendant's sixth amendment right to a jury drawn from a fair cross section of the community and the prospect of depriving him of that right if women as a class are systematically excluded. The right to a proper jury cannot be overcome on merely rational grounds." 419 U.S. 522, 533-34, 42 L. Ed. 2d 690, 700, 95 S. Ct. 692, 699-700.

61, 68, 68 L. Ed. 2d 671, 680, 101 S. Ct. 2176, 2182; *Thomas v. Collins* (1945), 323 U.S. 516, 529-30, 89 L. Ed. 430, 440, 65 S. Ct. 315, 322; *Lubavitch Chabad House of Illinois, Inc. v. City of Evanston* (1982), 112 Ill. App. 3d 222, 225-26.) Here, as in *Payne*, the right assertedly threatened or violated is defendant's right under the sixth amendment to a fair and impartial jury, and therefore, it is that amendment which must be examined and applied. Since the decisions in *Newsome* and in *Swain* and its progeny are based solely on the fourteenth amendment and not upon a specific right under the sixth amendment, they are not controlling here.

In *Payne*, we referred to the fact that in *Taylor v. Louisiana* (1975), 419 U.S. 522, 530, 42 L. Ed. 2d 690, 698, 95 S. Ct. 692, 697-98, the Supreme Court accepted " 'the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment' " and stated that " 'the requirement has solid foundation.' " We also pointed out that in the same case, the Supreme Court held that the State's systematic exclusion from the jury of " 'identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial.' " (106 Ill. App. 3d 1034, 1036, 436 N.E.2d 1046, 1052, quoting 419 U.S. 522, 530, 42 L. Ed. 2d 690, 698, 95 S. Ct. 692, 698.) In *Payne*, we stated:

"Although the *Taylor* case involved the exclusion of a discrete group during the venire selection rather than during the *voir dire* selection of jurors, we see no rational difference warranting the allowance of racial discrimination by the State in the latter instance but not the former. Obviously, the very purpose of refusing to tolerate racial discrimination in the composition of the venire is to prevent the State's systematic exclusion of any racial group in the composition of the jury itself. The desired goal of interaction of a cross section of the community does not occur within the venire, but rather, is only effectuated by the petit jury that is selected and sworn to try the issues. It follows that the systematic exclusion of prospective jurors solely because of their race is equally invidious and unconstitutional at any stage of the jury selection, *i.e.*, from the time the general jury list is prepared by the jury commissioner until the jury is actually selected and sworn. If we were to hold otherwise, the constitutional right to a jury drawn from a fair cross section of the community could be rendered a nullity through the use of peremptory challenges. We would have to resort to casuistry to hold that a State may do at the *voir dire* selection of the jury what it is constitutionally precluded from doing at

the venire selection of the jury." 106 Ill. App. 3d 1034, 1036-37, 436 N.E.2d 1046, 1048.

The *Newsome* court does not explain why it would be a violation of the sixth amendment for the State to systematically exclude women or blacks[5] from the jury during the venire jury selection solely because of their gender or race but it would not be a violation of the sixth amendment for the State to systematically do so during the *voir dire* selection of jurors.

Moreover, *Payne* is based not only upon a defendant's right to an impartial jury under the sixth amendment, but also upon the roles of the State, the prosecutor and the court itself in a criminal trial. *Newsome* does not address any of these issues which we believe are essential to a determination of whether a prosecutor may systematically exclude blacks from a jury in any given case solely because of their race. Specifically, as to the role of the prosecutor, *Newsome* does not take into account the precept that the prosecutor is the representative of all the people, including the defendant, and it is as much his duty to safeguard the constitutional rights of the defendant as those of any other citizen. (*People v. Oden* (1960), 20 Ill. 2d 470, 483, 170 N.E.2d 582, 588; *People v. Valdery* (1978), 65 Ill. App. 3d 375, 378, 381 N.E.2d 1217, 1219-20.) *Newsome* also overlooks the fact that the prosecutor does not represent an ordinary party to a controversy, but represents a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. (*Berger v. United States* (1935), 295 U.S. 78, 88, 79 L. Ed. 1314, 1321, 55 S. Ct. 629, 633.) When a prosecutor systematically excludes blacks from the jury in any given case solely because they are blacks, he is not safeguarding the constitutional rights of the defendant. In fact, he is not seeking justice. He is only seeking to win a case and convict. This is a clear violation of his ethical and professional duty. See *People v. Payne* (1982), 106 Ill. App. 3d 1034, 1037, 436 N.E.2d 1046, 1048; *Berger v. United States* (1935), 295 U.S. 78, 88, 79 L. Ed. 1314, 1321, 55 S. Ct. 629, 633; *People v. Oden* (1960), 20 Ill. 2d 470, 483, 170 N.E.2d 582, 588; *People v. Valdery* (1978), 65 Ill. App. 3d 375, 378, 381 N.E.2d 1217, 1219-20;

[5]Although *Taylor v. Louisiana* involved the systematic exclusion of women from juries because of their gender and *Payne* involved the systematic exclusion of blacks because of their race, the holding and principles in *Payne* are applicable whenever the members of any discrete group are systematically excluded by the State during the selection of the jury solely because of their membership in the discrete group. *People v. Payne* (1982), 106 Ill. App. 3d 1034, 1037 n.2, 436 N.E.2d 1046, 1048 n.2.

ABA Standards, The Prosecution Function 1.1(c) (1974); ABA Code of Professional Responsibility, EC 7—13 (1979).

As to the role of the court itself in a criminal prosecution, we must be mindful that the appearance of justice in a criminal trial is as important as justice in fact. Clearly, if nothing else, the appearance of justice affects the integrity of the judicial process itself. (*Rose v. Mitchell* (1979), 443 U.S. 545, 555-56, 61 L. Ed. 2d 739, 749, 99 S. Ct. 2993, 3000.) This is one of the important reasons why the judiciary must not blink at the reality of what the State is seeking to do here and in cases such as *Payne* and *Newsome*. The State is seeking to establish, by judicial approval, the right to practice racial discrimination in the prosecution of its citizens. To us, if the State succeeds, it will not only destroy the appearance of justice in our courtrooms, but it will also cast grave doubt on the integrity of the judicial process. Those citizens who are selected as jurors in a criminal case are expected to judge the defendant solely on the basis of his acts and not on the basis of his race. The selected jurors can hardly be expected to accomplish this task if they see that they, themselves, were selected by the State not on the basis of their individual qualities, but as members of a particular race. Thus, in order to maintain the appearance of justice and the integrity of our judicial process, we believe that in selecting a jury in a criminal case, the State, like our Constitution, must be color-blind. See *Plessy v. Ferguson* (1896), 163 U.S. 537, 559, 41 L. Ed. 256, 263, 16 S. Ct. 1138, 1146 (Harlan, J., dissenting).

This leads to what we believe is another major shortcoming of *Newsome* and cases similarly decided. *Newsome* does not forthrightly recognize and acknowledge that prosecutors are actually excluding blacks from serving on juries in criminal cases solely because of their race when there are black defendants. However, it is an open secret that prosecutors in Chicago and elsewhere have been using their peremptory challenges to systematically eliminate all blacks, or all but token blacks, from juries in criminal cases where the defendants are blacks.[6] (See Waltz, *Now It's Harder for Lawyers to Pick Biased Jury*, Chicago Sun-Times, July 13, 1982, at 30, col. 1.) Since all others can see and understand this, how can we properly shut our minds to it? (*Child Labor Tax Case* (1922), 259 U.S. 20, 37, 66 L. Ed. 817, 819, 42 S. Ct. 449, 450.) There comes a point when we should not be ignorant as judges of what we know as men. *Watts v. Indiana* (1949), 338 U.S. 49, 52, 93 L. Ed. 1801, 1805, 69 S. Ct. 1347, 1349.

---

[6]The list of cases in which the issue has been raised on appeal in some form continues to grow. (See *People v. Newsome* (1982), 110 Ill. App. 3d 1043; *People v.*

We believe that the judiciary must not only forthrightly recognize and acknowledge that prosecutors are practicing racial discrimination in the selection of juries in criminal cases where there are black defendants, but the judiciary should also demonstrate an awareness of the effect of the problem on our society. The systematic exclusion of blacks from jury service in any given case solely because of their race impairs the confidence of the public in the administration of justice. Such racial discrimination by the State is at war with our basic concept of a democratic society and a representative government. The harm is not only to the accused, but to society as a whole. See *Rose v. Mitchell* (1978), 443 U.S. 545, 556, 61 L. Ed. 2d 739, 749, 99 S. Ct. 2993, 3000; *People v. Payne* (1982), 106 Ill. App. 3d 1034, 1038, 436 N.E.2d 1046, 1049.

We also believe that judicial awareness of the existence of the problem and its effect upon our society is essential because our system of law is not based upon some transcendental revelation, but upon the conscience of our society ascertained as best it can be by a tribunal disciplined for the task. We believe the conscience of our society can no longer tolerate the State's systematic exclusion of blacks from juries solely because of their race. It does not matter what procedure or form the State uses to accomplish such pernicious discrimination. The simple fact is that it should not be done by the State un-

---

*Turner* (1982), 110 Ill. App. 3d 519, 442 N.E.2d 637; *People v. Gosberry* (1982), 109 Ill. App. 3d 674, 440 N.E.2d 954; *People v. Teague* (1982), 108 Ill. App. 3d 891, 439 N.E.2d 1066; *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046; *People v. Belton* (1982), 105 Ill. App. 3d 10, 433 N.E.2d 1119; *People v. Dixon* (1982), 105 Ill. App. 3d 340, 434 N.E.2d 369; *People v. Batteast* (1982), 105 Ill. App. 3d 1201 (Rule 23 order); *People v. Gaines* (1981), 88 Ill. 2d 342, 430 N.E.2d 1046; *People v. Mims* (1981), 103 Ill. App. 3d 673, 431 N.E.2d 1126; *People v. Lavinder* (1981), 102 Ill. App. 3d 662, 430 N.E.2d 243; *People v. Clearlee* (1981), 101 Ill. App. 3d 16, 427 N.E.2d 1005; *People v. Vaughn* (1981), 100 Ill. App. 3d 1082, 427 N.E.2d 840; *People v. Tucker* (1981), 99 Ill. App. 3d 606, 425 N.E.2d 511; *People v. Allen* (1981), 96 Ill. App. 3d 871, 422 N.E.2d 100; *People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029; *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117; *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330; *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448; *People v. Thornhill* (1975), 31 Ill. App. 3d 779, 333 N.E.2d 8; *People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731; *People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409; *People v. Petty* (1972), 3 Ill. App. 3d 951, 279 N.E.2d 509; *People v. Fort* (1971), 133 Ill. App. 2d 473, 273 N.E.2d 439; *People v. Butler* (1970), 46 Ill. 2d 162, 263 N.E.2d 89; *People v. Cross* (1968), 40 Ill. 2d 85, 237 N.E.2d 437; *People v. Dukes* (1960), 19 Ill. 2d 532, 169 N.E.2d 84; and *People v. Harris* (1959), 17 Ill. 2d 446, 161 N.E.2d 809.) In addition, the issue has been substantially raised in *People v. Banks*, 1st Dist., No. 79—1550, a case which has been argued but has not yet been decided. All but four of these cases were tried in Cook County.

der any procedure or form. (*People v. Gosberry* (1982), 109 Ill. App. 3d 674, 683, 440 N.E.2d 954, 960.) Racial discrimination by the State is no longer acceptable in our society—period. See cases cited and discussed in R. Kluger, Simple Justice 750-78 (1977).

The *Newsome* opinion states that " '[t]his court does not condone the use of peremptory challenges to exclude prospective jurors on the basis of race.' " (110 Ill. App. 3d 1043, 1055, quoting *People v. Allen* (1981), 96 Ill. App. 3d 871, 878, 422 N.E.2d 100, 106.) However, in our judgment, the *Newsome* opinion does something worse then condone the practice of which it speaks because, in effect, it serves to perpetuate the practice of racial discrimination by the State in the selection of juries. In our view, racial discrimination in the selection of juries by the State, whether accomplished subtly or brazenly, must be stopped by the judiciary in no uncertain terms, or the judiciary will be serving as an accomplice to such discrimination by allowing its continuation in our courtrooms. This goes beyond mere condonation.

The *Newsome* court suggests that the problem should be solved by the legislature. (110 Ill. App. 3d 1043, 1055.) However, the problem exists in the courtrooms and not in the halls of the legislature. Therefore, we in the judiciary cannot afford to allow the problem to continue within our own realm by labeling it one of legislative domain. (*People v. Gosberry* (1982), 109 Ill. App. 3d 674, 681-82, 440 N.E.2d 954, 960.) We must not forget that the appearance of justice in the courtroom is as important as justice in fact. Thus, the judiciary itself must stop even the appearance of racism by the State in selecting a jury.

The *Newsome* opinion also states that *Payne* "sets forth no specific standard or guidelines to be followed as an aid to the trial courts or the bar." (110 Ill. App. 3d 1043, 1054 n.3.) We reject this criticism of *Payne*. A prosecutor's systematic exclusion of blacks from a jury solely because they are blacks occurs under varying circumstances which are not susceptible of precise definition. It is for this reason *Payne* holds that when it reasonably appears to the trial judge by his own observation or after motion by the defendant, that the prosecuting attorney is using peremptory challenges to systematically exclude blacks from the jury solely because they are blacks, the trial judge should require the prosecutor to demonstrate, by whatever facts and circumstances exist, that blacks were not being systematically excluded from the jury solely because they were blacks. No further standard or guideline is needed or advisable. Plainly, trial judges, given their presence in the courtroom during the entire proceeding and their ability to observe all facets of the *voir dire* selection, should

be able to distinguish *bona fide* reasons for exclusion from contrived declarations of motives. If trial judges are fit to make all the other meaningful decisions during the course of a trial, then they are fit to make the decisions required here. Moreover, if errors are made, they are subject to review the same as any other errors that may occur during trial.

The *Newsome* court states that our system of peremptory challenges would be significantly altered under *Payne.* (110 Ill. App. 3d 1043, 1055.) We disagree. If the prosecutor seeks to peremptorily excuse people from jury service for any reason other than the fact that they happen to belong to a discrete group, then *Payne* has no applicability or relevance. Moreover, it should be recognized that *Payne* has no application to peremptory challenges used by the defendant. This is so because the Bill of Rights (specifically, in this case, the sixth amendment) only protects citizens against acts by the government. The government has no such reciprocal constitutional entitlement. This point is made very clear by Associate Professor James P. Carey, Loyola University of Chicago, School of Law, who states:

> "Against this background one immediate response to *Payne* is to ask, if the defense operates in this way, why should the State be handicapped? Isn't the State entitled to a fair trial? It is *Payne*'s answer to these very questions which mark it as a special decision.
>
> In every criminal prosecution the power of the State is arrayed against the individual. Our constitution, and especially the first eight amendments, limit the power of government. The State is limited precisely because it is the State. This is the essence and genius of our constitutional scheme.
>
> Although the State is a party to a criminal lawsuit and is entitled to a fair trial, it is not entitled to the protections of the Bill of Rights, which were adopted to curtail State power *vis-a-vis* the individual. Therefore it is entirely irrelevant that defense counsel use peremptory challenges in the same way that the State does.[7] For what is crucial is that the State's use

---

[7]We note that in England, since 1305, peremptory challenges may be exercised only by the defendant. Except for challenges for cause, the Crown can only require jurors whom it wishes to challenge to stand aside from the panel until the defendant has exercised all his challenges. Then, if a jury has not been selected, the jurors who have stood aside will be used unless the Crown can challenge them for cause. The procedure of having a juror stand aside is not a peremptory challenge because, even when the procedure is employed by the Crown, which is seldom, the juror who has been stood aside may be actually seated as a juror after the defendant has exercised

erodes a precious right, the right to trial by a jury composed of a fair cross section of the community.

In basing [its] decision upon the sixth amendment right to jury trial and upon the general constitutional premise that the power of the State is limited, [*Payne*] is on solid ground. \* \* \*

It is clear then that even though defense counsel use peremptories in this way, it is impermissible for the State to do so." *Some Thoughts on People v. Payne*, Ill. St. B.A. Newsletter, 13 Judicial Ad. 7 (August 1982).

Accordingly, *Payne* does not significantly alter our system of peremptory challenges. Rather, *Payne* requires the State to justify its actions in excluding prospective jurors only in certain instances,[8] based on a rational perspective of the relationship between the State and the individual. In effect, *Payne* merely gives real meaning to what would otherwise be vacuous statements by the courts regarding the State's systematic exclusion of blacks from the jury solely because of their race. *People v. Gosberry* (1982), 109 Ill. App. 3d 674, 681, 440 N.E.2d 954, 959.

■ The right to a fair and impartial jury as guaranteed by the sixth amendment is one of the most precious rights we have as citizens of this country. It follows that we in the judiciary have a compelling duty to scrupulously see that this right is not compromised or denied as to any single defendant, lest the right be eroded or lost for all citizens. We have applied this perspective to this case, and we conclude that for the reasons stated in this opinion, defendant's sixth amendment right to a fair and impartial jury, which includes the right to a jury drawn from a fair cross section of the community and the corresponding right not to have the State affirmatively frustrate that entitlement, was violated. Therefore, defendant's conviction cannot stand.

---

all his challenges. Specifically, 26 Halsbury's Laws of England par. 624 (4th ed. 1979) states: "The Crown has no right to make peremptory challenges." *People v. Payne* (1982), 106 Ill. App. 3d 1034, 1039 n.4, 436 N.E.2d 1046, 1050 n.4.

[8]Significantly, *Swain* makes the same requirement, except *Swain* holds that the requirement comes into play only after the prosecutor has practiced racial discrimination in the use of peremptory challenges in "case after case." The term "peremptory challenge" does not mean "absolute" or "without any exception" under *Swain*, and we know of no case which holds that there are no exceptions to the prosecutor's privilege to exercise peremptory challenges. The peremptory challenge privilege has always been subject to control by the trial court if it is used by the prosecutor in violation of a right guaranteed to the defendant under the Constitution. See *Swain v. Alabama* (1965), 380 U.S. 202, 224, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 838.

In addition, we believe that the roles of the State, the prosecutor and the court itself in a criminal trial preclude the State from using peremptory challenges to systematically exclude blacks from the jury solely because they are blacks in any given case and at any stage of the selection of the jury. Applying this perspective to this case, we conclude that this presents an additional reason why defendant's conviction cannot stand.

Accordingly, the judgment is reversed, and the case is remanded for a new trial.

Reversed and remanded.

WHITE, J., concurs.

McNAMARA, P.J., dissenting:
I dissent. I find no infirmity, constitutional or otherwise, in the State's exercise of its peremptory challenges. (*Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824; *People v. Harris* (1959), 17 Ill. 2d 446, 161 N.E.2d 809; *People v. Teague* (1982), 108 Ill. App. 3d 891, 439 N.E.2d 1066; *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330.) This is particularly true in the present case, where by agreement of the parties no report of proceedings was made of the *voir dire* process and where defendant first objected two days after selection of the jury.

Since defendant's only assignment of error is the State's use of its peremptory challenges, I would affirm the judgment of conviction.